**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

PTP ONECLICK, LLC,

        Plaintiff,

    v.

AVALARA, INC.,

        Defendant.

No. 1:18-CV-01671-WCG

**DEFENDANT AVALARA, INC.'S**
**<u>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.    DISMISSAL OF ALL COUNTS IS PROPER ......................................... 1

    A.    The '915 Patent Is Invalid, and No Delay Will Change That ............... 1

        1.    A Finding of Patent Ineligibility Is Warranted Now—at the Pleadings Stage and Without Further Delay ............................... 2

        2.    PTP Fails to Establish that the Claims Survive Alice's Two-Part Test ........................................................................... 4

            a.    PTP All but Admits the '915 Patent Claims Abstract Ideas .......... 5

            b.    Nothing in the Patent Claims "Transforms" this Abstract Idea into Something Patent Eligible ............................... 6

        3.    PTP's Additional Defense of Claim 12 Rings Hollow ............................ 7

        4.    PTP Mischaracterizes the PTAB's Decision About the '915 Patent, Which Did Not Substantively Address the Claims' Patent Ineligibility ........................................................................... 8

    B.    PTP Admits It Failed to Adequately Plead Contributory Infringement ............... 9

    C.    PTP's Trade Secret Misappropriation and Contract Claims Are Time-Barred ........................................................................... 9

        1.    PTP Misconstrues the Relevant Confidentiality Agreement ................... 11

        2.    California's Statute of Limitations Should Apply to the Breach of Contract ........................................................................... 11

    D.    PTP's Allegations Under Count III (Misappropriation Under WUTSA) Likewise Are Beyond the Extraterritorial Reach of WUTSA ............................ 13

    E.    Wis. Stat. § 100.20 Does Not Provide a General Private Cause of Action ......... 14

III.    CONCLUSION ........................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)........................................................................3, 4, 7

*ABB Turbo Sys. AG v. TurboUSA, Inc.*,
    774 F.3d 979 (Fed. Cir. 2014)..........................................................................10, 11

*Abraham v. General Casualty Co.*,
    217 Wis. 2d 294, 576 N.W.2d 46 (1998)................................................................12

*Affinity Labs of Texas, LLC v. Amazon.Com, Inc.*,
    No. 6:15-cv-0029, 2015 WL 3757497 (W.D. Tex. June 12, 2015)...........................7

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208, 134 S. Ct. 2347 (2014)............................................................ passim

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    216 Ill. 2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801 (2005).....................................13

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012).................................................................................2

*Beaver v. Exxon Mobile Corp.*,
    348 Wis. 2d 762, 2013 WL 1908639 (Ct. App. Wis. May 9, 2013).........................9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................... passim

*Boar's Head Corp. v. DirectApps, Inc.*,
    No. 2:14-CV-01927-KJM, 2015 WL 4530596 (E.D. Cal. July 28, 2015)................2

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018).................................................................................7

*CyberFone Sys., LLC v. Cellco P'ship*,
    885 F. Supp. 2d 710 (D. Del. 2012)..........................................................................2

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011).................................................................................4

*Czajkowski v. Haskell & White, LLP*,
    208 Cal. App. 4th 166 (2012)....................................................................................9

## <u>TABLE OF AUTHORITIES</u>
*(Continued)*

**Page(s)**

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018)...................................................................................3, 5, 6

*Diamond v. Diehr*,
  450 U.S. 175 (1981)..............................................................................................................6

*Elec. Power Grp. v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...........................................................................................7

*Emergency One, Inc. v. Waterous Co.*,
  23 F. Supp. 2d 959 (E.D. Wis. 1998)............................................................................14, 15

*Faigin v. Doubleday Dell Pub. Grp., Inc.*,
  98 F.3d 268 (7th Cir. 1996) ...............................................................................................12

*In re Aftermarket Filters Antitrust Litig.*,
  No. 08-C-4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .................................................14

*Intellectual Ventures I, LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017)............................................................................................2

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)............................................................................................4

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018)........................................................................................3, 5

*Joyce v. Pepsico, Inc.*,
  340 Wis. 2d 740, 2012 WL 1033468 (Ct. App. Wis. Mar. 29, 2012) ......................................9

*Open Text S.A. v. Alfresco Software Ltd*,
  No. 13-CV-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ....................................2

*Paynter v. ProAssurance Wis. Ins. Co.*,
  381 Wis. 2d. 239, 911 N.W.2d 374 (Ct. App. 2018) ............................................................12

*Reusch v. Roob*,
  610 N.W. 2d 168........................................................................................................14, 15

*SAP Am., Inc. v. Investpic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)................................................................................... passim

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017)............................................................................................5

**TABLE OF AUTHORITIES**
*(Continued)*

**Page(s)**

*State v. Pierce,*
   191 Wis. 1, 209 N.W. 693 (1926).................................................................13

*Studio & Partners, s.r.l. v. KI,*
   No. 06-C-628, 2007 WL 3342597 (E.D. Wis. Nov. 7, 2007).................................12

*Tuxis Techs., LLC v. Amazon.com, Inc.,*
   No. 13-1771-RGA, 2015 WL 1387815 (D. Del. Mar. 25, 2015) .............................2

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
   874 F.3d 1329 (Fed. Cir. 2017), *cert. denied,* No. 18-124, 2018 WL 3626097
   (U.S. Oct. 15, 2018)...........................................................................4, 6

*UbiComm, LLC v. Zappos IP, Inc.,*
   No. 13-1029-RGA, 2013 U.S. Dist. LEXIS 161559 (D. Del. Nov. 13, 2013) .........................2

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.,*
   18 F. Supp. 3d 831 (E.D. Tex. 2013).......................................................2

*Voter Verified, Inc. v. Election Sys. & Software LLC,*
   887 F.3d 1376 (Fed. Cir. 2018)...........................................................3, 8

*Yauger v. Skiing Enters., Inc.,*
   206 Wis. 76, 557 N.W.2d 60 (1996).......................................................10

**STATUTES**

Wis. Stat. § 100.20.................................................................................1, 14, 15

Wis. Stat. § 100.70.................................................................................14, 15

Wis. Stat. § 893.07.................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12.................................................................................1, 2, 4, 6

MPEP Sections 1207.03(III) and 1207.03(a).........................................................8

## I.        INTRODUCTION

PTP's Opposition ignores the law—completely in some places—and argues factual "disputes" that do not save its Complaint from dismissal.  As to the patent, first, PTP seeks only delay.  It makes no attempt to show how its patent is directed to anything more than an abstract concept carried out on a generic computer.  And it utterly ignores the many Federal Circuit cases establishing that merely adding a generic computer to a longstanding, human-performed or commercial process (e.g., filing taxes) is not patentable.  Moreover, the same cases establish the appropriateness of dismissing such patent actions under Rule 12.  Second, PTP concedes it failed to properly plead a claim for contributory infringement; the patent Count should be dismissed.

PTP likewise ignores the law regarding its other Counts.  PTP admits that the relevant statutes of limitations have expired unless tolled for PTP's delayed discovery.  But proving delayed discovery is PTP's burden and requires a plaintiff to plead at least *some facts* from which one could conclude that a plaintiff lacking *actual notice* also lacked *constructive notice* of the facts underlying its claim.  But here, PTP only reiterates its lack of actual notice and is silent about justifying its delayed discovery.  Indeed, PTP highlights *nothing* in its Complaint from which one might conclude that it could not have known about the operative facts, which PTP admits were public.  Looking to the Complaint itself, the only facts pled by PTP support the conclusion that the operative facts were readily available and discoverable with any inquiry, much less by exercising reasonable diligence.  This compels dismissal.  Finally, PTP fails to rebut the issues raised with PTP's claims under Section 100.20 and WUTSA.  Avalara has identified fatal issues with each of PTP's Counts that can and should be resolved now.

## II.        DISMISSAL OF ALL COUNTS IS PROPER

### A.        The '915 Patent Is Invalid, and No Delay Will Change That.

PTP raises three arguments for why its patent infringement count should not be dismissed now—at the pleadings stage—because its patent invalid under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014).  None withstands even cursory scrutiny.  First, PTP presses that the Court should delay because patent eligibility is "highly factual."  ECF No. 12, Pl.

PTP Oneclick, LLC's Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), at 8-10.  But PTP ignores a slew of cases dismissing patent actions at the pleadings stage.  In any event, PTP fails to identify a *single* fact in dispute.  Second, PTP argues its patent does not claim abstract ideas because it solved the "problem of how to automatically prepare tax returns."  *Id.* at 13.  Merely automating a known process—here, calculating and filing taxes—is the epitome of an unpatentable abstract idea, as cases cited by Avalara (and ignored by PTP) make clear.  Finally, PTP argues its patent is nonetheless "inventive" because it improved "efficiencies" and at least one claim has a "database."  *Id.* at 14-15.  But it is black-letter law that using generic computer elements to improve a longstanding commercial process does not warrant a patent.  And PTP fails to identify any issue that here requires further litigation.  Dismissal is inevitable and should be ordered now.

### 1.    A Finding of Patent Ineligibility Is Warranted *Now*—at the Pleadings Stage and Without Further Delay.

PTP first argues that dismissal should be delayed until some unidentified point in the future because the two-part *Alice* inquiry is "factual."  *See* Opp'n at 8-11.  Not so.  Patent eligibility under *Alice* is an issue of law.  *Intellectual Ventures I, LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017).  Factual issues can inform the decision, but only where factual disputes based on the patent are identified.  *See SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166, 1168-69 (Fed. Cir. 2018).  But it is often clear from the patent that only generic computer parts are being used in a longstanding process.  This is why the Federal Circuit and district courts around the nation have, in scores of decisions, dismissed patent infringement claims on § 101 grounds on the pleadings.  *See, e.g.*, ECF No. 9, Mem. in Supp. of Def.'s Mot. to Dismiss Under Fed. R. Civ. P. 12(b)(6) ("Mot.') at 16-17.[1]

PTP offers no reason to depart from this precedent.  Indeed, it ignores the many cases that

---

[1] *See also, e.g.*, *Open Text S.A. v. Alfresco Software Ltd*, No. 13-CV-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) (collecting cases and dismissing where no supposedly "unresolved" issues were identified); *Boar's Head Corp. v. DirectApps, Inc.*, No. 2:14-CV-01927-KJM, 2015 WL 4530596, at *3 (E.D. Cal. July 28, 2015) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2015 WL 1387815 (D. Del. Mar. 25, 2015); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA, 2013 U.S. Dist. LEXIS 161559, at *21 (D. Del. Nov. 13, 2013); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012); *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831, 838 (E.D. Tex. 2013).

hold this issue is a matter of law that requires no delay of decision. PTP then points to *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) and *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) for the possibility that fact issues justify delay. *See* Opp'n at 8.[2] Both cases are inapposite. In *Berkheimer*, the Federal Circuit partially reversed judgment of patent ineligibility a disputed issue of fact existed regarding whether the patented method improved the functionality of the computer at issue. *See Berkheimer*, 881 F.3d at 1369-70. But the details of *Berkheimer* do not help PTP. First, the patentee argued that the requirement in the claimed method for a computer component, called a "parser" kept the claims from being abstract in the Step 1. The Federal Circuit examined the patent itself and rejected this argument. *Id.* at 1367 ("That the parser transforms data from source to object code does not demonstrate nonabstractness without evidence that this transformation improves computer functionality in some way."). Then, at Step 2, the patentee argued *with specific citations to the patent* that certain aspects of the computer itself were not generic, and that a factual dispute existed about whether the patent left doubt that they were "well known" at the time. *Id.* at 1368-69. The Federal Circuit reviewed the patent itself (*see id.* at 1362-64, 1367, 1369) and rendered a split decision. Where the patent described only generic computer components, the court held the claims to be patent ineligible, while overturning summary judgment as to several claims because the patent itself supported a factual dispute regarding whether the components were generic and well-known. *Id.* at 1370-71. Likewise, in *Aatrix*, the court reversed dismissal and allowed an amended complaint because the patent itself claimed "improvements in the functioning and operation of the computer." *Aatrix*, 882 F.3d at 1127-28.

But neither PTP's brief nor its patent make any such statements here. PTP does not argue that its patented method somehow improves the functionality of a *computer itself*. PTP points to nothing in the patent that even suggests a dispute about whether "the computer" recited in the

---

[2] While PTP stresses that *Berkheimer* and *Aatrix* are from 2018—February 2018—more recent Federal Circuit decisions—decisions cited in Avalara's motion (Mot. at 16-17)—confirm the propriety of dismissal for patents such as PTP's that clearly claim ineligible subject matter. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 n.4 (Fed. Cir. 2018); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018); *SAP Am.*, 898 F.3d 1161; *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018).

claims is somehow new or improved.  Rather, PTP presses the unremarkable position that "the computer" improves the functionality of *filing taxes*.  *See, e.g.*, Opp'n at 12 (defending the claim's patentability because, *inter alia*, "local sales and use taxes had to be determined manually," which was "cumbersome" and "expensive," resulting in error, and "no one had figured out how to prepare local sales and use tax automatically by computer"); *id.* at 13 (patent "solved the problem" of "how to automatically prepare tax returns").  But this does nothing to highlight a factual dispute because, unlike *Berkheimer* and *Aatrix*, the '915 patent says nothing about an improved computer or components.  And, as a parade of cases has held—cases cited in Avalara's opening memorandum and ignored by PTP—simply adding generic computer parts into a known process does not make the newly automated process patentable.[3]  To the contrary, PTP's argument about the improvement here being to the *tax-filing processes* is an admission that "the computer" in the '915 patent claims is nothing more than a tool to carry out the process. This is reason for prompt dismissal, not delay.  *See SAP Am.*, 898 F.3d at 1169-70 (holding patent invalid in Rule 12 motion where computer used only as a "tool" in the method).

The only remaining authority cited by PTP in its effort to postpone dismissal—the "*Berkheimer* memo"—is even more remote.  *See* Opp'n at 12.  This memo—written years after the '915 patent even issued—addresses patent examination procedure before the PTO.  *See* Kurtenback Decl., ECF No. 13, Ex. 6 at 3.  More importantly, it is silent regarding standards for the district court, let alone the timing of dismissal where a patent on its face is invalid.

### 2.     PTP Fails to Establish that the Claims Survive *Alice*'s Two-Part Test.

PTP fares no better when it turns to the *Alice* test because PTP similarly fails to highlight anything except generic computer components being used as tools in a longstanding process. *See* Opp'n at 11-17.  Specifically, PTP alleges that its process for filing taxes was "inventive" and "technically innovative," and that no one else could "figure out" how to automate tax

---

[3] *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318, 1328 (Fed. Cir. 2016); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017), *cert. denied*, No. 18-124, 2018 WL 3626097 (U.S. Oct. 15, 2018) (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611(Fed. Cir. 2016); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011).

preparation.  *See id.*  But sprinkling adjectives into the Complaint cannot obscure the focus of the *Alice* analysis: the patent itself.  This matter is governed by the patent's disclosures and claims— not PTP's self-serving characterizations.  *Interval Licensing LLC*, 896 F.3d at 1344 (eschewing patentee's characterizations, instead focusing on the claims); *Berkheimer*, 881 F.3d at 1369.[4]

> **a.     PTP All but Admits the '915 Patent Claims Abstract Ideas.**

Avalara's motion applied the Federal Circuit's well-accepted "pen and paper test," and explained how PTP's claims "can be performed in the human mind, or by a human using pen and paper," and are therefore directed to an abstract idea under *Alice* step 1.  Mot. at 6-7, 9-10.  PTP utterly ignores this.  PTP agrees that "people certainly have been paying taxes for years," and this was generally done "manually," resulting in errors and "spending an inordinate amount of time."  Opp'n at 12, 14.  This ends any dispute as to the claims' abstract nature.

PTP nonetheless offers *Data Engine Technologies*, 906 F.3d 999, for the notion that "automatically prepar[ing] tax returns" is more than an abstract idea.  *See* Opp'n at 13.  But the '915 patent is readily distinguishable from the patents in *Data Engine* where the claims related to an improvement in computer functionality, specifically, an improvement on how the computer displayed spreadsheets.  *See Data Engine Techs.*, 906 F.3d at 1002-3; *id.* at 1008.  Indeed, the *Data Engine* claims did not merely recite the *idea* of navigating through spreadsheets; they recited a specific interface and implementation that improved the process and *how* humans interacted with the computer.  *See id.* at 1008-9.  In contrast, the other claims that related to the identification and storage of generic spreadsheets were held invalid because such claims were not directed to a similar improvement.  *See id.* at 1012.

PTP's claims fall into the second category, and PTP makes little effort to dispute this. *See* Opp'n at 13.  The '915 patent claims no technical improvement to a computer, and PTP's Opposition does not say otherwise.  Indeed, PTP's only citations to the patent refer to general background for the invention in column 1 and a summary of the system in column 3, neither of

---

[4] *See also* Motion at 17 and cases cited there, e.g., *SAP Am., Inc*, 898 F.3d 1161 (analyzing claims themselves to determine eligibility) and *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1373 (Fed. Cir. 2017) ("Our mandate from the Supreme Court under Alice step one is to ascertain what the claims are "directed to …").

which refer to the workings of the computer or any improvement thereto. *See* Opp'n at 12 (citing '915 patent at 1:45-55, 1:51-60, and 3:7-16). *PTP's argument about Alice Steps 1 and 2 on pages 13-14 of its opposition does not cite the patent at all*, relying instead on attorney argument about "increased efficiency" and "decreased mistakes" by "automatically" calculating tax returns. *See* Opp'n at 13-14. Unlike *Data Engine* and *Berkhiemer*, PTP points to nothing in the patent directed to an improvement to the computer itself. Attorney argument regarding novelty of the tax process—"no one had figured out how to prepare local sales and use taxes automatically by computer," that "no comprehensive solution" existed for automatic tax preparation, and that "few companies had developed any form of computerized system for filing sales and use taxes" (Opp'n at 12, 14)—is wholly irrelevant to whether *the patent claims* are directed to an abstract idea, as countless cases make clear.[5]

### b. *Nothing in the Patent Claims* "Transforms" this Abstract Idea into Something Patent Eligible.

PTP's arguments under *Alice* step 2—whether the patent claims include something additional that "transforms" the nature of the abstract idea into a patent-eligible application—fare even worse. Opp'n at 13-15. As it did with *Alice* step 1, PTP disregards the arguments and precedent detailed in Avalara's motion (*compare* Mot. at 11-13, *with* Opp'n at 13-15), which established that PTP's addition of generic computer components to a known process is insufficient as a matter of law to transform an abstract idea. Mot. at 11-13 (citing *Voter Verified*, 887 F.3d at 1386; *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018); *SAP Am.*, 898 F.3d at 1169-70). Instead of rebutting this clear law, PTP constructs two strawmen, both easily debunked.

First, PTP claims that "Avalara does not refute that PTP's Complaint and attached patent describe an inventive concept, which statements must be credited as true under Rule 12(b)(6)." Opp'n at 13. This ignores the law, discussed above, which requires focus on the patent's description and claims, rather than self-serving recitations about novelty in the complaint. *See*

---

[5] *See, e.g., Diamond v. Diehr*, 450 U.S. 175, 189-90 (1981); *Two-Way Media Ltd.*, 874 F.3d at 1340; *Berkheimer*, 881 F.3d at 1366-67.

*SAP Am.*, 898 F.3d 1161; *see also Berkheimer*, 881 F.3d at 1369.   PTP's Complaint and Opposition do not identify anything in the patent claims that calls for a special-purpose computer or that improves the computer itself.   As mentioned above, PTP's arguments regarding *Alice* Step 2 do not cite to the patent at all.   *See* Opp'n at 13-15.

Second, PTP again relies on the *Aatrix* decision, which it calls "illuminating."   Opp'n at 14.   Avalara agrees—*Aatrix* is illuminating because it underscores exactly what PTP's brief and patent are missing: any evidence that the patent claims "improvements in the functioning and operation *of the computer*."   *Aatrix*, 882 F.3d at 1127-28 (emphasis added); *see also* Opp'n at 14. Instead, according to PTP, its inventive concept was increasing the "efficiencies" in filing taxes—which was a "cumbersome" and "time-consuming" process—*by adding a computer used as a tool*.   Opp'n at 14.   Thus, PTP fails to raise any underlying factual issues such as those in *Berkheimer* or *Aatrix*.   The claims fail the *Alice* test and should be held unpatentable—now.

### 3.   PTP's Additional Defense of Claim 12 Rings Hollow.

PTP mounts a further defense of claim 12, arguing that the requirement for a "database" (which PTP calls a "specific structure") raises claim 12 above claim 1's abstract ideas.   Opp'n at 15-17.   Generic databases do not transform an abstract method any more than a generic "computer."   *SAP Am.*, 898 F.3d at 1169 ("Some of the claims require various databases and processors, which are in the physical realm of things.   But it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources….").[6]

PTP's effort to distinguish this aspect of *SAP America*, 898 F.3d 1161, and *BSG*, 899 F.3d 1281, on the ground that, while the computer components recited in those patents were generic, the '915 patent has many pictures, is unconvincing at best.   Opp'n at 16.   Notably, PTP fails to establish that these figures describe the general database recited in Claim 12.   Indeed, these figures are "exemplary only."   '915 patent, 11:62-12:2.   In any event, relying solely on the

---

[6] *See also Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea"); *Berkheimer*, 881 F.3d at 1369-70; *Affinity Labs of Texas, LLC v. Amazon.Com, Inc.*, No. 6:15-cv-0029, 2015 WL 3757497, at *8 (W.D. Tex. June 12, 2015).

number of figures, PTP fails to identify what (if anything) in these figures renders the database of claim 12 non-generic.  PTP's effort to distinguish *Voter Verified*, F.3d at 1386, on the ground that it "does not involve a database at all," is even more misplaced.  PTP points to nothing in the '915 patent that suggests the "database" of claim 12 is any less commonplace than the "standard personal computer," "visual display device," "keyboard," "data storage devices," "laser printers," and "scanners" claimed in *Voter Verified*.  In fact, *Voter Verified* controls the outcome here.  In *Voter Verified*, the claimed "standard personal computer," "visual display," and "keyboard," were standard components insufficient to transform the abstract idea of "voting, verifying the vote, and submitting the vote for tabulation"—a task humans had performed for centuries.  *Id.* at 1385; *see also Berkheimer*, 881 F.3d at 1370 ("The limitations amount to no more than performing the abstract idea ... with conventional computer components.").  Claim 12 thus fares no better than claim 1—both require nothing more than generic computer components and claim nothing that improves them.  Both are invalid.[7]

### 4.    PTP Mischaracterizes the PTAB's Decision About the '915 Patent, Which Did Not Substantively Address the Claims' Patent Ineligibility.

All else having failed, PTP urges the Court to defer to the Patent Office.  Opp'n at 17.  But in doing so, PTP's misstates the nature of the Patent & Trial Appeal Board's ("PTAB") decision regarding the '915 patent.  PTP glosses over the limited nature of the PTAB's decision, namely whether the Examiner's brief supported his earlier rejection.  The Examiner did not, so the PTAB reversed the rejection and sent the application back to the Examiner.  Lewis Decl., Ex. 2.  That was the sum total of the PTAB proceedings.  *See id.*  Contrary to PTP's claims, the PTAB did not "consider[] whether the patent claims were eligible patent subject matter" or "[f]ind the claims to be patent eligible."[8]  Opp'n at 17; Lewis Decl., Ex. 2.  Indeed, PTP does not dispute that neither the Examiner nor the panel evaluated any of the Federal Circuit cases

---

[7] PTP did not assert that anything in its dependent claims separates them from independent claims 1 and 12 for eligibility purposes.  Opp'n at 17.

[8] PTP's reference to MPEP Sections 1207.03(III) and 1207.03(a) is misguided.  Opp'n at 18.  Section 1207.03 addresses the Examiner offering a new ground of rejection in the Examiner Answer; it does not address whether the Examiner has supported an existing rejection, which was the issue before the PTAB here.

now before this Court.  The panel merely found the Examiner's citation-free justification in the brief for his earlier denial to be inadequate.  This does not warrant deference regarding the larger question posed here:  whether the patent claims run afoul of that unmentioned Federal Circuit precedent.  They do.  The Court should thus evaluate the patent claims under the two-part *Alice* test.  At bottom, this case is no different than *Alice,* where the Supreme Court found claims related to a method of mitigating "settlement risk" patent-ineligible because the claims "merely require[d] generic computer implementation."  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. at 221.  The '915 patent is no different, and invalid for the same reasons.

**B.      PTP Admits It Failed to Adequately Plead Contributory Infringement.**

PTP acknowledges that it failed to plead that the accused Avalara products have no substantial non-infringing use—an essential element of its contributory infringement claim. Opp'n at 18.  PTP thus concedes that it has not properly alleged (and has no basis to allege) contributory infringement.  This claim should be dismissed.

**C.      PTP's Trade Secret Misappropriation and Contract Claims Are Time-Barred.**

Three of PTP's counts (II, III, and V) for trade secret misappropriation and for breach of contract must be dismissed for failure to comply with the applicable statutes of limitation. Specifically, PTP's Complaint does not allege in even a conclusory manner that PTP could not have discovered the supposed misappropriation and breach of contract by engaging in a reasonably diligent inquiry, as is required.[9]  While PTP alleges that it did not have *actual notice* of Avalara's supposed misappropriation and breaches before 2017 (Compl. ¶ 43; Opp'n at 19-20), PTP alleged no facts whatsoever supporting the conclusion that it lacked *constructive* notice.

PTP cannot avoid the statute of limitations or hide behind the "discovery rule" here because it is PTP's burden, and PTP has failed to plead even the bare allegation that the

---

[9] Both the Federal DTSA and Wisconsin UTSA bar suits based on misappropriation that occurred outside the limitations period (three years) that would have been discovered "by the exercise of reasonable diligence," while the California statute of limitations for contracts bars suits based on conduct that occurred outside a four-year period that "reasonably could have been discovered."  Proving that the statute of limitations is tolled is the burden of the party seeking shelter under the discovery rule.  *See, e.g., Beaver v. Exxon Mobile Corp.*, 348 Wis. 2d 762, 2013 WL 1908639, at *8 (Ct. App. Wis. May 9, 2013); *Joyce v. Pepsico, Inc.*, 340 Wis. 2d 740, 2012 WL 1033468, at *4 (Ct. App. Wis. Mar. 29, 2012); *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 174 (2012).

supposed misappropriation and breaches were not readily apparent to a diligent person. This is especially problematic because PTP alleges that once it conducted an inquiry, in 2017, PTP was readily able to ascertain, based on publicly available information and without even purchasing a copy of Avalara's product, the information underlying its allegation that Avalara had been incorporating the accused features for over six years. *See* Compl. ¶¶ 43, 48-54; Opp'n at 6, 20-21. The pleadings and PTP's admissions in this regard now preclude any conclusion other than PTP could have discovered the accused features in Avalara's products between 2012 and 2015 with even minimal inquiry, much less reasonable diligence. Because PTP bears the burden on this issue (*see* n.9 above), it is fatal that PTP also does not plead any effort to be diligent between 2012 and 2015, any excuse for its lack of diligence, or any facts supporting an allegation that PTP would not have been able to discover the injuries if PTP had been diligent.

PTP argues instead that it was not under any obligation to be diligent or to investigate Avalara's products because, under the confidentiality agreement (Compl. Ex. 2), Avalara allegedly had an obligation to destroy written "Information" upon informing PTP that it would not proceed to buy PTP. *Id.* ¶ 4. But this agreement to destroy "Information" was not a waiver of the statute of limitations. *Yauger v. Skiing Enters., Inc.*, 206 Wis. 76, 84, 557 N.W.2d 60, 63 (1996) (a "waiver must clearly, unambiguously, and unmistakably inform the signer of what is being waived," and the contract "looked at in its entirety, must alert the signer to the nature and significance of what is being signed"). If anything, the parties' discussions and PTP's information-sharing underscores why PTP should have engaged in a reasonable investigation.

PTP next relies on *ABB Turbo Sys. AG v. TurboUSA, Inc.*, 774 F.3d 979 (Fed. Cir. 2014), but *ABB* only highlights what PTP failed to plead. In *ABB*, the plaintiff alleged multiple separate and surreptitious misappropriations and concealment efforts taken after the defendant acquired the alleged trade secrets. *Id.* at 986-87. That is, the Complaint alleged facts demonstrating a lack of *constructive notice*, including that the defendant had arranged clandestine meetings and cash drops in foreign countries to pay ABB employees for trade secrets, had hired former employees that had stolen documents, had altered documents to remove reference to ABB and

replace it with reference to defendant, and had engaged in a conspiracy to send information from Europe to a U.S. entity. *See, e.g.*, Decl. of Daniel Keese ("Keese Decl."), Ex. 1 ¶¶ 70-118. The Federal Circuit, applying Eleventh Circuit law, thus unsurprisingly reversed the dismissal at the pleading stage. *ABB*, 774 F.3d at 985-87. Here, PTP alleges no such facts of concealment. The Court is thus left with a complaint that admits the accused features were easily found in 2017, but that includes no facts whatsoever regarding why PTP could not have discovered those features earlier. The relevant statutes of limitations thus compel dismissal.

### 1. PTP Misconstrues the Relevant Confidentiality Agreement.

PTP's arguments regarding the confidentiality agreement also fall flat. Any confidentiality obligation expired on August 1, 2014, three years after the agreement was signed. Compl. Ex. 2 ¶ 10. Thus, Avalara's confidentiality obligations to PTP expired well before the earliest actionable date under the statutes of limitation, barring PTP's Counts II, III, and V.

PTP attempts to sidestep this by pointing to a destruction requirement in the contract. But this requirement also does not avoid the statutes of limitations. Even under PTP's view of the confidentiality agreement, it required destruction only of "written" materials and notice of that destruction. Compl. Ex. 2 ¶ 4. This leaves PTP in a fatal bind. On one hand, Avalara is permitted to use any knowledge gained from PTP, other than written materials, on or after August 1, 2014. But to the extent PTP alleges that the breach is based on misappropriation of such written materials, PTP does not allege that Avalara ever provided a destruction notice, and the absence of such a destruction notice would have placed PTP on notice of potential breaches and triggered the statutes of limitations in a way that they would have already expired. Furthermore, having been aware of such non-destruction, PTP should not be able to now claim that the expiration clause in paragraph 10 does not apply with equal force to written documents that escaped destruction. Either way, PTP's Counts II, III, and V are time-barred.

### 2. California's Statute of Limitations Should Apply to the Breach of Contract

PTP also disputes whether the California (four-year) statute of limitation or the Wisconsin (six-year) statute of limitation applies to Count V. Given that PTP now admits that

the supposed breach was apparent in 2012, more than six years ago, Count V should be dismissed under either statute of limitations.  Nevertheless, PTP is also wrong that Count V is not a "foreign action" under the Wisconsin borrowing statute.

PTP argues that any injury in Wisconsin, no matter how slight, will preclude the action from being a "foreign action" under the Wisconsin borrowing statute, Section 893.07.  That is simply not the standard and the cases cited by PTP do not support its argument.  First, PTP cites *Faigin v. Doubleday Dell Pub. Grp., Inc.*, 98 F.3d 268, 272 (7th Cir. 1996), a Seventh Circuit case applying Wisconsin law in the context of a defamation suit rather than a contract action. *Faigin* is an outlier, however, given that it explicitly rested its holding on a "quirk" of defamation law, that the law traditionally viewed injury as occurring wherever an allegedly defamatory writing was published.  *Id.* at 270; *see also Paynter v. ProAssurance Wis. Ins. Co.*, 381 Wis. 2d 239, 252-56, 911 N.W.2d 374, 381-83 (Ct. App. 2018).  But this reasoning does not apply to other (non-defamation) tort actions, and certainly not in contract actions, as the Wisconsin Court of Appeals has explained. *Paynter*, 911 N.W.2d at 383 ("Permitting a plaintiff to file suit in Wisconsin as long as he or she sustained some injury in this state—even if that injury was minimal and the plaintiff suffered far greater injuries in another state—would subvert the borrowing statute's goals of reducing forum shopping and encouraging the expedient litigation ….").  The other case cited by PTP, *Studio & Partners, s.r.l. v. KI*, No. 06-C-628, 2007 WL 3342597, at *3 (E.D. Wis. Nov. 7, 2007), actually supports the opposite of what PTP implies, holding that the case was subject to the foreign statute of limitations, and explaining that under that plaintiff's theory (like PTP's), "the borrowing statute would almost never be applied because presumably a plaintiff could always concoct some negligible or inchoate injury occurring in Wisconsin …." *Id.* at *3 n.3.

As Avalara explained in its opening brief, contract cases are "foreign" if "the final significant event giving rise to [a] suable claim-the alleged breach of contract" occurred outside Wisconsin. *Abraham v. General Casualty Co.*, 217 Wis. 2d 294, 576 N.W.2d 46, 47-48 (1998).  Here, PTP alleges no facts that suggest any "final significant event" regarding its trade secrets

might have occurred in Wisconsin. Indeed, the only facts alleged suggest the alleged breach occurred *outside* of Wisconsin, given that Avalara's offices for the accused products reside and always have resided outside of Wisconsin, a point that PTP does not contest. Accordingly, the borrowing statute applies, and the California statute of limitations should control.

**D.    PTP's Allegations Under Count III (Misappropriation Under WUTSA) Likewise Are Beyond the Extraterritorial Reach of WUTSA.**

As a threshold matter, PTP's response fails to acknowledge the well-established principle of extraterritoriality applicable here: "As a general proposition, Wisconsin statutes are to be construed and considered as relating to people and institutions within the state of Wisconsin, i.e., as intraterritorial and not extraterritorial." *State v. Pierce*, 191 Wis. 1, 209 N.W. 693, 694 (1926); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801, 852 (2005). PTP makes no argument that this general proposition should not apply. Thus, consistent with this established principle, there must be some limitation on WUTSA's extraterritorial reach. And while PTP quibbles with Avalara's reliance on analogous areas of law, it proposes no alternative standard. Opp'n at 22-24.

In contrast, Avalara presented the Court with a reasoned analysis supporting the application of a "significant and adverse effects" standard. Mot. at 22-25. The Complaint falls well short of this by pleading only Avalara's Green Bay location without pleading any connection to the accused conduct. Nor does an allegation "on information and belief" that "Avalara Products" are sold "throughout the United States," including in this district, meet the "significant and adverse effects" standard. *Id.* at 24-25. And while PTP now argues in its Opposition that it "does business in Wisconsin, providing services and selling its products, which incorporate the claimed trade secrets" (Opp'n at 22 (citing Compl. ¶¶ 35, 53)), the cited paragraphs *in the Complaint* do not make this allegation or support any such inference. PTP's allegation that two of its "members" (the total number of which is unknown) reside in Wisconsin, as well as in California, New Jersey, Minnesota, and Illinois, where PTP is headquartered, does little to establish "significant and adverse effects." Indeed, a holding that

-13-

the presence of shareholders across the country, including in Wisconsin, is sufficient to establish "significant and adverse effects" in Wisconsin would expand WUTSA to circumstances that are "almost entirely interstate in nature," contrary to *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998).  Instead, the core allegations of the Complaint relate to conduct having no connection to Wisconsin.  And to the extent PTP alleges such nationwide conduct faintly touches on Wisconsin, *Emergency One* establishes that this is not enough to overcome the presumption against extraterritorial application of Wisconsin law.  *Id.* at 972.

**E.      Wis. Stat. § 100.20 Does Not Provide a General Private Cause of Action.**

Lastly, PTP's arguments regarding Wisconsin's Unfair Competition Statute, Section 100.20, also ignore the law.  Section 100.20 provides a private right of action for unfair competition and/or unfair trade practices *only* in two limited situations: (a) for violations of Section 100.70 and (b) for violations of *orders* issued under Section 100.20.  *See* Wis. Stat. § 100.20(5).  This is clear and express in the text of subsection 100.20(5), under which PTP purports to bring its claim.  The "orders issued under [Section 100.20]" referenced by subsection 100.20(5) are the "general orders" or "special orders" that can be issued by the Department of Agriculture, Trade and Consumer Protection pursuant to the authority granted under subsections 100.20(2) and/or 100.20(3).  Cases that substantively analyzed the issue are in accord.  *See, e.g.*, *Emergency One*, 23 F. Supp. 2d at 971-72 (holding that no private cause of action exists under Section 100.20 except for violations of a department order issued pursuant to Section 100.20, e.g., under subsection 100.20(3)); *In re Aftermarket Filters Antitrust Litig.*, No. 08-C-4883, 2009 WL 3754041, at *10 (N.D. Ill. Nov. 5, 2009) (citing *id.*).[10]

Despite this guidance, PTP contends that Section 100.20(5) provides a *general* private right of action for any violation of subsection (1t) by wrongfully equating a violation of any provision of Section 100.20 with violating an "order issued under [Section 100.20]."  Opp'n at 25.  The only case PTP cites in support is *Reusch v. Roob*, 610 N.W. 2d 168, 176-77, an appeal

---

[10] The current notes of decision for Section 100.20 on the Wisconsin Legislature's website cites *Emergency One's* holding.  Keese Decl. Ex. 2, § 100.20 "Notes of Decision."

from a small claims action that states—without addressing the statutory interpretation issue not challenged on appeal—that Section 100.20(5) provides a private right of action for a violation of Section 100.20(1t).   The court in *Reusch* did not discuss the statutory framework above, however, and strangely assumed that the words "provide" and "withhold" should be transposed in Section 100.20(1t).   The court encouraged the Wisconsin Legislature to make such a change, which it chose not to in the intervening seventeen years.   *See id.* at 176 n.4.   Nevertheless, PTP argues that *Reusch* is entitled to "great deference" and should effectively overrule the statute's clear language and *Emergency One*, which thoroughly considered and rejected the argument PTP makes.   Avalara respectfully submits that *Emergency One*—which directly considered the relevant statutory interpretation issue—is correct and should be followed.

Issues of statutory interpretation start with the language of the statutes themselves—and here, the statutory scheme clearly provides a private action *only* for violating an *order* under Section 100.20 (and for violations of Section 100.70).   Wis. Stat. § 100.20(5).   Moreover, the Wisconsin legislature's amendments to that Section *after Reusch*—which declined to make the change that the court in *Reusch* encouraged—shows a clear intent to not provide a general private right of action.   Specifically, the legislature added a right of action only for violations of a particular section (Section 100.70), which would be unnecessary if the statute provided a general private right of action, while refraining from adding a broader private right of action that applies to all violations of Section 100.20 or to violations of subsection 100.20(1t), evidencing a clear legislative choice.   *Compare* Wis. Stat. § 100.20 (1997) *with* Wis. Stat § 100.20 (2017).[11]

## III.   CONCLUSION

For the foregoing reasons and the reasons set forth in its Opening Brief, Avalara respectfully requests the Court grant its Motion to Dismiss.

---

[11] PTP's argument is also belied by its Complaint, which alleges "unfair competition," not "unfair trade practices," while Section 100.20(1t) *only* deals with conduct that constitutes an "unfair trade practice."   *See, e.g.*, Compl. ¶¶ 1, 72-77, H.   Section 100.20 prohibits certain conduct as unfair competition, certain conduct unfair trade practices, and conduct that can be either or both, but Section 100.20(1t) is limited to *only* unfair trade practices and not to unfair competition.   Wis. Stat. § 100.20 (2017).   Accordingly, even to the extent that Section 100.20(5) provided a general private right of action for unfair trade practices under subsection 100.20(1t)—it does not—PTP's unfair competition claim is not saved because it has not plead a cause of action for unfair trade practices under subsection 100.20(1t).

-15-

DATED:  December 12, 2018

/s/ Brandon Lewis
_____

Brandon M. Lewis, Bar No. 1034160
BLewis@perkinscoie.com
**Perkins Coie LLP**
One East Main Street, Suite 201
Madison, WI  53703-5118
Telephone:  608.294.4009
Facsimile:  608.663.7499

Ryan J. McBrayer
RMcBrayer@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

Daniel T. Keese
DKeese@perkinscoie.com
**Perkins Coie LLP**
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone:  503. 727.2000
Facsimile:  503.727.2222

*Attorneys for Defendant*
*Avalara, Inc.*