UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PTP ONECLICK, LLC, | CASE NO. C19-0640JLR |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| v. | |
| AVALARA, INC., | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant Avalara, Inc.'s ("Avalara") motion to dismiss Plaintiff PTP OneClick, LLC's ("PTP") complaint.  (MTD (Dkt. ## 8, 9);[1] *see also* Compl. (Dkt. # 1).)  The court has reviewed the motion, the parties' submissions filed in support of and in opposition to the motion, the relevant portions of the record, and the applicable law.  In addition, PTP requested oral argument on Avalara's motion (*see*

---

[1] The court's citations to the motion to dismiss relate to Avalara's brief in support of that motion, which is located at docket number 9.

Request (Dkt. # 44)), and the court heard the argument of counsel on September 26, 2019.  Being fully advised, the court GRANTS in part and DENIES in part the motion and DISMISSES WITH PREJUDICE and without leave to amend PTP's claims for patent infringement and unfair competition under Wisconsin statutory law (*see* Compl. ¶¶ 55-60, 72-77).

## II.  BACKGROUND

PTP is a limited liability company organized under the laws of the state of Delaware with members who are citizens of Illinois, California, Wisconsin, New Jersey, and Minnesota.  (Compl. ¶¶ 2, 5.)  Avalara is incorporated in and has its principal place of business in the state of Washington.  (*Id.* ¶ 5.)  Avalara is in the business of selling tax preparation software.  (*See id.* ¶ 14.)  Avalara has a satellite office in Wisconsin and has sold tax software "in Wisconsin and throughout the United States."  (*See id.* ¶¶ 3, 7; *see also* MTD at 10.[2])  On October 22, 2018, PTP filed a complaint against Avalara alleging five counts:  (1) patent infringement, (2) misappropriation under federal trade secret laws, (3) misappropriation under state uniform trade secret laws, (4) unfair competition under Wisconsin statutory law, and (5) breach of contract.  (Compl. ¶¶ 55-81.)

PTP alleges that, in 2006, Pavlos T. Pavlou and Nichols M. Mavros filed a provisional application for a patent of the Pavlou SalesTaxPRO, which is a "method and system" for "automatically calculating sales and use tax, populating tax forms, managing both state and self-administered local taxes, and optionally e-filing those returns (where

---

[2] When referencing page numbers in this ruling, the court references the page number generated by the court's electronic filing system.

permitted)." (*Id.* ¶ 13.)  In 2006, Mr. Paylou also founded the company now known as PTP to develop and market the invention.  (*Id.*)

In 2017, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 9,760,915 ("the '915 Patent") to PTP as assignee of inventors Mr. Pavlou and Mr. Mavros.  (*Id.* ¶ 44.)  The '915 Patent describes a system and method for automatically preparing state and local sales and use taxes.  (*Id.* ¶ 13; *see also id.* ¶¶ 44, 46, Ex. 3 ("'915 Patent").)  During the prosecution of the '915 Patent, the USPTO Examiner rejected the claims of the '915 Patent on the basis that the claims recited a patent-ineligible abstract idea under 35 U.S.C. § 101.  (Kurtenbach Decl. (Dkt. # 13) ¶ 2, Ex. 1 at 4.)  PTP appealed the decision to the USPTO's Patent Trial and Appeal Board ("the PTAB").  (*Id.* ¶ 4, Ex. 3 (attaching appeal brief).)  Reciting the Supreme Court's framework as articulated in *Alice Corporation Party Ltd. v. CLS Bank International*, 573 U.S. 208, 216-18 (2014), which follows the two-part test set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), the PTAB reversed the Examiner.  (Kurtenback Decl. ¶ 4, Ex. 5.)  The PTAB's reversal, however, was grounded in the Examiner's failure to adequately support his rejection of the '915 Patent.  (*See id.* at 5 ("In this case, we determine that the Examiner fails to establish that the features of any claim, when considered as an ordered combination, fail to transform the claim as required by the *Alice* test.").)

The USPTO issued the '915 Patent with two independent claims.  Claim 1 recites:

1.  A computer-implemented method of automatically preparing tax returns of a taxable entity comprising:

//

receiving by a computer tax information associated with the taxable entity, wherein the tax information includes information regarding a location and a transaction associated with the taxable entity;

automatically determining by the computer a plurality of taxing authorities associated with the location and the transaction;

automatically determining by the computer multi-level tax rates associated with the plurality of taxing authorities based on the received tax information;

automatically calculating by the computer one or more tax amounts based on the received tax information and the multi-level tax rates;

automatically determining by the computer multi-level tax return information based on the received tax information and the one or more calculated tax amounts; and

transmitting over a computer network the multi-level tax return information to a computer system associated with one of the plurality of taxing authorities associated with the multi-level tax return information.

('915 Patent at 133-34.) The second independent claim, Claim 12, is to a system for preparing tax returns, which depends on a "database," and requires the same steps as Claim 1. (*Id.* at 134.)

PTP alleges that, in 2011, Avalara, a company in the business of selling tax preparation software, expressed an interest in PTP's products, and PTP and Avalara discussed a potential business relationship. (Copmpl. ¶ 14.) The parties arranged to meet in Avalara's Washington office on August 2, 2011, to discuss Avalara's "possible acquisition" of PTP. (*Id.* ¶ 16, Ex. 2 ("Confidentiality Agreement") at 2.)

On August 1, 2011, the parties executed a confidentiality agreement, which required Avalara to keep confidential any information that PTP disclosed in connection with the possible acquisition, including the details of PTP's invention. (*See id.* ¶ 17; *see*

*also* Confidentiality Agreement ¶¶ 1-2.) Avalara also promised that it would "not use any Information other than in connection with the Transaction." (Confidentiality Agreement ¶ 1.) Among other terms, the confidentiality agreement required Avalara, if Avalara "determined not to proceed" with the possible acquisition, to "promptly destroy all copies" of the written information that PTP had supplied to Avalara in connection with the possible acquisition, or to "promptly deliver" to PTP all copies of the same written information. (*Id.* ¶ 4.) The confidentiality agreement stated that it governed "all Information received during the period from the date of this agreement," and that Avalara's "obligations of confidentiality . . . expire[d] three years from the date of this [confidentiality] agreement." (*Id.* ¶ 10.)[3]

As a part of the discussions, Mr. Pavlou disclosed the underlying functionality of Pavlou SalesTax PRO, including PTP's trade secrets and algorithms for automatically determining the appropriate taxing authorities and applicable tax rates. (Compl. ¶ 22.) Mr. Pavlou also provided Avalara an unlocked copy of Pavlou SalesTaxPRO and provided additional confidential materials in response to the follow-up questions about PTP's plans for geographic and product growth. (*Id.* ¶¶ 24-25.) In April 2012, Avalara informed PTP that it was no longer interested in a pursuing a business relationship with PTP. (*See id.* ¶ 26.)

//

---

[3] The confidentiality agreement also recited that it is "governed by and construed in accordance with the laws of the [s]tate of California applicable to contracts between residents of that [s]tate and executed in and to be performed in that [s]tate, without giving effect to principles of conflicts of law." (*Id.* ¶ 9.)

PTP alleges that after the 2011 discussions, Avalara released a series of products and revisions that enabled Avalara to support state and local tax return requirements of its customers and enabled automatic determination and application of local taxing authorities. (*Id.* ¶ 34.) PTP alleges that this was the functionality that Mr. Pavlou disclosed to Avalara in 2011 under the protection of the confidentiality agreement. (*Id.*) PTP alleges that it first learned of Avalara's misappropriation in 2017, when a customer informed Mr. Pavlou that Avalara's products appeared to contain the same functionality as PTP's product. (*Id.* ¶ 43.)

## III.  ANALYSIS

The court now considers Avalara's motion to dismiss each of PTP's claims.

### A.  Legal Standards and Materials the Court Considers

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

//

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'. . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). "[I]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). The Ninth Circuit, however, carves out certain exceptions to this rule. First, the court may consider documents appended or attached to the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Second, a court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by*

*Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Third, a court may take judicial notice of matters of public record. *Lee*, 250 F.3d at 688-89 (citations omitted); *see also* Fed. R. Evid. 201. Accordingly, the court considers the confidentiality agreement and the '915 Patent, which are appended to the complaint. (*See* Compl. Exs. 2-3.) The court also takes judicial notice of the '915 Patent[4] and the USPTO prosecution history of the '915 Patent.[5]

**B.     Patent Infringement**

Avalara moves to dismiss PTP's claim of patent infringement on grounds of invalidity. (MTD at 13-25.) Specifically, Avalara argues that the '915 Patent is invalid under 35 U.S.C. § 101 because it is directed to an abstract concept. (*See id.*) The parties agree that the framework established by the Supreme Court in *Alice*, 573 U.S. at 216-18, which follows the two-part test of *Mayo*, 566 U.S. at 75-82, controls the court's analysis

//

//

//

---

[4] *See Miles, Inc. v. Scripps Clinic & Research Found.*, 951 F.2d 361 (9th Cir. 1991) (holding that district court did not abuse its discretion in judicially noticing a patent when ruling on a motion to dismiss nor did such judicial notice convert the motion to dismiss into a motion for summary judgment).

[5] *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, No. 216CV00148KJMEFB, 2016 WL 4192439, at *3 (E.D. Cal. Aug. 9, 2016) (ruling that a copy of a patent and the patent's file history are matters of public record susceptible to judicial notice under Rule 201) (citing *Coinstar, Inc. v. Coinbank Automated Sys., Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998) (granting the defendant's request for judicial notice of two patents and documents from the file history of one of the patents)); *see also Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1028 (S.D. Cal. 2019) (ruling that taking judicial notice of records and reports of administrative bodies, including documents issued by the USPTO, such as a patent's prosecution history, is appropriate on motion for judgment on the pleadings).

for determining patent eligibility or invalidity under 35 U.S.C. § 101. (*See* MTD at 13-16; Resp. at 13-14.) The court agrees with the parties and applies *Alice*'s two-step test.

In step one, the court must determine whether the patent claims at issue are directed to one of the classes of patent-ineligible concepts, namely "laws of nature, natural phenomena, and abstract ideas." *See Alice*, 573 U.S. at 217. Avalara argues that the '915 Patent is directed to an abstract idea—namely, "calculating and filing business tax returns." (MTD at 16.) If the claims at issue are directed to an abstract idea, then the court proceeds to step two of the *Alice* analysis, which analyzes whether the claims add an "inventive concept" sufficient to "transform" the claim into "something more." *Alice*, 573 U.S. at 217. The Supreme Court describes an "inventive concept" as "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (quoting *Mayo*, 566 U.S. at 73) (alteration in *Alice*).

The '915 Patent has 22 claims, but only two independent claims—Claim 1 and Claim 12. (*See* '915 Patent at 133-34.) The claims are all directed to the idea of calculating and filing business tax returns. (*See id.*) Specifically, the '915 Patent states that "[i]n accordance with the present invention, the system determines the appropriate tax return forms that are required based on the zip code of the location of the business and fills in the appropriate data into the appropriate places in those tax forms thus greatly facilitating the preparation of tax returns . . . ." (*Id.* at 133.) As described below, having carefully reviewed the claims at issue here, and having applied the two-step analysis

required under *Alice*, the court concludes that the claims at issue amount to nothing more than the addition of a computer into the ordinary process of preparing and filing a business tax return. Specifically, the claims identify a taxable transaction, determine the tax rates applicable to that transaction depending on the location (*e.g.*, city, county, state, etc.), calculate the tax, and prepare and file the returns with the appropriate taxing authority. The only difference between the claims and their associated steps and how humans have always paid taxes is the use of a computer. Accordingly, the court concludes that the claims and their associated steps represent nothing more than an abstract idea.

1. Step One and Claim 1

In step one, the court examines the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018) (quoting *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018)). "[C]omputational methods which can be performed *entirely* in the human mind" are abstract and non-patentable under 35 U.S.C. § 101 because they "are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

In cases involving software, the step one inquiry "often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a

tool." *Id.* (internal quotation marks, alterations, and citations omitted). The Federal Circuit often uses a "pencil and paper" test at step one to determine if a human could perform the patented method with a pencil and paper instead of a computer. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (ruling that the patent is abstract because it is directed to a method that humans can and have executed using a pen and paper). Specifically, in determining whether the concept described in the claims is abstract and therefore non-patentable, the court may consider whether the claimed subject matter "can be performed in the human mind, or by a human using pen and paper." *CyberSource Corp.*, 654 F.3d at 1371-72 (citing *Parker v. Flook*, 437 U.S. 584, 586 (1984) (applying pencil and paper test)); *see also OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) ("The pen-and-paper test . . . is an analytical tool to test whether the underlying concept described in the claims is abstract, and thus not patent-eligible.") (citing cases).

Evaluated in light of the foregoing Federal Circuit decisions, the court concludes that Claim 1 is directed to an abstract idea. The steps recited in Claim 1 are directed to a long-known, human-performed process: calculating and filing business tax returns. (*See* '915 Patent at 133-34.) Fundamentally, these steps boil-down to the annual process of gathering tax-related information, such as a list of transactions and the locations in which they occurred, determining the applicable city, county, state, or federal tax rate, calculating the amount of tax based on the applicable rate, and filing a return or returns with the appropriate taxing authority or authorities. (*See id.*) The only difference between the steps recited in Claim 1 and how humans have always paid business taxes is

that Claim 1 uses a "computer." Courts have determined that similar patents that simply apply a computer to a task long performed by humans either in their minds or using pen and paper are ineligible. *See, e.g.*, *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (invalidating claims that were "as a whole . . . drawn to the concept of voting, verifying the vote, and submitting the vote for tabulation," noting that "[h]umans have performed this fundamental activity that forms the basis of our democracy for hundreds of years."); *Alice*, 573 U.S. at 224-26 (invalidating claims directed to intermediated settlement on a generic computer).

The '915 Patent acknowledges that the steps it recites—calculating business taxes and preparing and filing tax returns—have been accomplished by accountants and business people for generations before 2006, which is the earliest claimed priority date for the '915 Patent. (*See* MTD at 18; *see also* '915 Patent at 121 (1:7-9 ("This application claims priority to and benefit of U.S. Provisional Patent Application No. 60/764,717, filed on Feb. 2, 2006.")).) On its face, the '915 Patent describes the normally "cumbersome and time-consuming nature" of manually calculating, preparing, and filing state and local sales and use tax returns. (*See* '915 Patent at 121 (1:20-27 ("The present invention relates to a system and method for preparing multi-level tax returns and more particularly for a system for calculating and preparing all state and local sales and use tax returns that are applicable for the locations where the taxpayer does business which greatly facilitates preparation minimizes the loss of tax deductions that are known to be overlooked because of the cumbersome and time-consuming nature of determining such deductions."); 1:31-60 (describing prior art systems and manual preparation); 2:5-8 ("The

system is . . . configured to facilitate preparation of local municipal sales and use tax returns which are normally cumbersome and time consuming to prepare.")).)  Indeed, in its response, PTP acknowledges that "people . . . have been paying taxes for years." (Resp. at 18.)  As the '915 Patent implicitly acknowledges, Claim 1 simply further automates with a generic computer what prior art had already accomplished:  "Although these systems facilitate sale and use tax preparation, they do not extend down to the level of local municipal taxing authorities. . . .  As such, accountants and business owners, in addition to the systems provided above, must determine and calculate returns for such local taxing authorities."  ('915 Patent at 121 (1:43-51).)  Based on the court's review of Claim 1 and its related steps and Federal Circuit case authority, the court concludes that the only purported advance of Claim 1—using a general-purpose computer to calculate and file business taxes—is an abstract idea.

    2.  <u>Step Two and Claim 1</u>

      The court also concludes that Claim 1 fails at step two.  To "transform" ineligible subject matter at step two, the claims must at a minimum apply conventional technological elements in a novel and unconventional way and not merely use a computer as a "tool" to implement an abstract idea.  *See, e.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc*., 841 F.3d 1288, 1300-01 (Fed. Cir. 2016) ("The solution requires arguably generic components, including network devices and 'gatherers' which 'gather' information.  However, the claim's enhancing limitation necessarily requires that these generic components operate in an unconventional manner to achieve an improvement in computer functionality."); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827

F.3d 1341, 1349-52 (Fed. Cir. 2016)). It is not sufficient to simply use "already available computers, with their already available basic functions, . . . as tools in executing the claimed process." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169-70 (Fed. Cir. 2018). In short, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

Based on its review of Claim 1 and the foregoing Federal Circuit authority, the court concludes that Claim 1 fails to transform the abstract concept of calculating and filing business tax returns—activities that tax-preparers and business people have been engaged in for decades or more—into a patentable idea. Claim 1 adds nothing more than a generic "computer" and "computer network" to the abstract concept. (*See* '915 Patent at 133-34 (Claim 1 at 26:56-27:10).) Specifically, Claim 1 describes "[a] computer-implemented method," performing various steps "by a computer," and "transmitting over a computer network" the tax returns. (*Id.*) As the Supreme Court stated in *Alice*: "[T]he relevant question is whether the claims . . . do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." 573 U.S. at 225. Here, they do not. *See, e.g.*, *SAP Am. v. InvestPic*, 898 F.3d at 1164-65, 1169-70 (ruling that generic databases and processors used to perform claims, which recited methods for analyzing investment data, did not provide an inventive concept under step two); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1282, 1284-85 (Fed. Cir. 2018) (affirming the district court's ruling that a generic database and "wide area network" did not add a transformative inventive concept to claims directed toward systems and methods of indexing information); *Voter Verified*, 887 F.3d at 1386 (ruling

that the claimed "standard personal computer," "visual display," and keyboard" were

standard components insufficient to transform the abstract idea of "voting, verifying the

vote, and submitting the vote for tabulation," activities human have long performed, into

an inventive concept); *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir.

2014) ("That a computer receives and sends the information over a network—with no

further specification—is not even arguably inventive.").

      3.  <u>Claim 12</u>

      The other independent claim—Claim 12—is no different.  Claim 12 also fails both

*Alice* steps one and two.  First, Claim 12 requires the same steps as Claim 1 but adds

elements such as a "database" and a "software application."  ('915 Patent at 134 (Claim

12 at 27:47-28:11).)  For purposes of patent eligibility under 35 U.S.C. § 101, the two

independent claims are indistinguishable and reduce to the use of a computer or database

for calculating and filing business tax returns.  (*See id.* at 133-134 (*compare* Claim 1 at

26:56-27:10 *with* Claim 12 at 27:47-28:11)); *see also Alice*, 573 U.S. at 226 ("[T]he

system claims are no different from the method claims in substance. The method claims

recite the abstract idea implemented on a generic computer; the system claims recite a

handful of generic computer components configured to implement the same idea.").

Thus, for the same reasons that Claim 1 constitutes an abstract, non-patentable concept

under Alice step one, Claim 12 also constitutes an abstract concept.  Further, there is

nothing transformative about Claim 12's remaining elements, which include a generic

computer (or "computer-implemented system"), a database (including "at least one

database for storing tax information"), software (including "a software application stored

in a non-transitory memory of a computer"), and a computer network (causing the computer to "transmit over a computer network . . . tax return information"). (*See* '915 Patent at 134 (Claim 12 at 27:47-28:11)); *see also Mortg. Grader, Inc. v. first Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (stating that generic computer components such as an "interface," "network," and "database," fail to satisfy the inventive concept requirement); *Intellectual Ventures I*, 792 F.3d at 1368 (stating that a "database" and "a communication medium" "are all generic computer elements"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) ("Such vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention."). Thus, Claim 12 also fails to satisfy *Alice* step two.[6]

4. PTP's Response

PTP offers three arguments in response Avalara's motion—none of which convince the court. First, PTP argues that dismissal of its patent-infringement claim should be delayed because the two-part *Alice* test is "highly factual." (*See* Resp. at 14-17.) Next, PTP argues that the '915 Patent passes the two-part *Alice* test. (*See id.* at 17-23.) Finally, PTP argues that the PTAB's decision, reversing the initial patent

//

---

[6] The dependent claims do not change the court's calculus. They simply add more abstract ideas while adding nothing that improves how a computer functions. (*See* '915 Patent at 134 (Claims 2-11 at 27:11-46; Claims 13-22 at 28:12-62).) Further, PTP does not assert that anything in the dependent claims separates them from the independent Claims 1 and 12 for eligibility purposes. (*See* Resp. at 23 ("Avalara does not dispute that if claims 1 and 12 are patent eligible, all dependent claims are as well.").)

examiner's rejection of the '915 Patent claims, is entitled to deference.  (*See id.* at 17-18.)

The court addresses these arguments in turn.

### a.  Deciding Patent Ineligibility at the Pleadings Stage

"Patent eligibility under 35 U.S.C. § 101 is a question of law that may contain underlying issues of fact."  *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1159 (Fed. Cir. 2018).  PTP argues that the court should delay any decision applying the two-part *Alice* test because the inquiry is "highly factual," and therefore, inappropriate at the pleadings stage.  (*See* Resp. at 14-16.)  PTP is correct that factual disputes can render dismissal inappropriate, but PTP has not identified such a dispute here.  (*See id.*)  "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."  *SAP Am., Inc.*, 898 F.3d at 1166; *see Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018).

Nevertheless, PTP relies on two recent Federal Circuit decisions that it argues supports its contention that dismissal is premature:  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1362 (Fed. Cir. 2018), and *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1123 (Fed. Cir. 2018).  (Resp. at 15-16.)  Neither case is applicable here. In *Berkheimer*, assertions in the patent itself were enough to create an issue of fact.  *See* 881 F.3d at 1369.  Indeed, the specification described "an inventive feature" that improved "computer functionality."  *See id.*  Likewise, in *Aatrix*, the Federal Circuit vacated a district court's dismissal and reversed the denial of leave to amend because the

proposed second amended complaint contained "numerous" and "specific" factual allegations directed to problems in computer functionality that were "solved by the *Aatrix* patented inventions." 882 F.3d at 1127. The Federal Circuit held that because the allegations, taken as true, "suggest[ed] that the claimed invention [was] directed to an improvement in the computer technology itself," the district court erred in finding, on a motion to dismiss, that the claimed invention was conventional and routine. *Id.*

Here, unlike either *Berkheimer* or *Aatrix*, neither the '915 Patent nor PTP's complaint alleges any improvement in computer technology; nor has PTP cited to any such allegation. (*See generally* Compl.; '915 Patent; Resp.) Rather, the '915 Patent describes improvements in the speed and accuracy with which humans can calculate and file business tax returns by automating that practice through the use of a generic computer or computer components performing these routine functions. As discussed above, this renders the '915 Patent abstract and invalid and PTP's claim for patent infringement subject to Rule 12(b)(6) dismissal.

### b. *PTP Fails to Establish that the Claims Survive Alice's Two-Part Test*

In asserting that the '915 Patent is directed patent-eligible subject matter under *Alice* step one, PTP ignores Avalara's arguments concerning the Federal Circuit's "pencil and paper" test (*see generally* Resp. at 17-19), and instead offers *Data Engine Technologies,* 906 F.3d 999, to support its argument (Resp. at 19). *Data Engine Technologies*, however, is inapposite. The claims that survived judgment on the pleadings in *Data Engine* related to an improvement in computer functionality— specifically, an improvement in how the computer displayed spreadsheets. 906 F.3d at

1002-03, 1008.  Indeed, the *Data Engine Technologies* claims did not merely recite the

idea of navigating through spreadsheets, they recited a specific interface and

implementation that improved the process and how humans interact with the computer.

*Id.* at 1008-09.  The court held that the remaining claims, which related to the

identification and storage of generic spreadsheets, were abstract under *Alice* step one

because they were not directed to a similar technological improvement.  *See id.* at 1012.

As discussed above, PTP's claims fall within the second category.  *See supra* § III.B.1, 3.

Indeed, PTP's only citations to the '915 Patent refer to the general background for the

invention and a summary of the system—neither of which refer to the workings of the

computer or any improvement thereof.  (*See* Resp. at 18 (citing '915 Patent at 121-22

(describing prior art at 1:41-60;[7] providing a detailed description at 3:7-16[8]))).)  Although

---

[7] This portion of the description of prior art states:

Of all of the systems disclosed above, only U.S. statutory invention registration H1,830 and the TaxWare system relate to use tax preparation.  Although these systems facilitate sale and use tax preparation, they do not extend down to the level of local municipal taxing authorities.  As such, the systems described above do not provide a complete solution for a business entity operating within a location subject to one or more local taxing authorities.  As such, accountants and business owners in addition to the systems provided above, must determine and calculate returns for such taxing authorities.  Moreover, any deductions provided as a result of paying local use and sales taxes in such local municipal taxing authorities are often not included in other tax returns because of the cumbersome nature and thus expense of determining such deductions.  Thus, there is a need for a system for calculating state and use taxes which also supports preparation of tax returns for local taxing authorities that are applicable to the locations where the taxpayer conducts business and takes into account tax deductions for such local use taxes.

('915 Patent at 121 (describing prior art at 1:41-60).)

[8] This portion of the detailed description states:

PTP argues that '915 Patent "increase[s] efficiency and decrease[s] mistakes in state and local sales and use tax preparation" (*id.*), unlike *Data Engine* or *Berkhiemer*, PTP points to nothing in the '915 Patent directed to the improvement of the computer itself. (*See generally id.* at 17-23).

PTP's arguments on *Alice* step two also do not withstand scrutiny. First, PTP argues that the "[c]omplaint and attached patent describe an inventive concept, which statements must be credited as true under Rule 12(b)(6)." (Resp. at 19.) In this context, however, the court is required to focus on the '915 Patent's description and claims, rather than conclusory recitations about novelty in the complaint. *See Secured Mail Sols. LLC v. Universal Wilde, Inc*., 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification.") (quoting *Sprewell*, 266 F.3d at 988). As discussed above, PTP's complaint and response do not identify anything in the '915 Patent claims that calls for a special-purpose computer or that improves the computer itself.[9] (*See generally* Compl., Resp.)

---

The present invention relates to a comprehensive system for receiving sales and client data and calculating and preparing various state and local sales and use taxes and returns. The system allows the user to view and print any of the returns supported by the system and optionally file the return with the proper taxing authority. In accordance with the present invention, the system is a complete solution for state and local sales and use taxes including those by municipal and local taxing authorities.

('915 Patent at 122 (providing a detailed description at 3:7-16).)

[9] PTP again mistakenly relies on the *Aatrix* decision. (*See* Resp. at 20.) Although the *Aatrix* court recognizes that "[p]lausible factual allegations may preclude dismissing a case under § 101," the court also recognizes that is not so where, like here, the record—in this case the

1    Accordingly, the court concludes that the claims fail the *Alice* test and are unpatentable.

2    As a result, PTP's claim for patent infringement is subject to dismissal.

3              *c.   The PTAB Decision*

4         Finally, PTP urges the court to defer to the PTAB's decision reversing the

5    examiner's initial determination that the '915 Patent's claims were not directed at

6    patent-eligible subject matter.  (Resp. at 23-24.)  First, the PTAB decision is not binding

7    on the court.  *See Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 n.7

8    (Fed. Cir. 2017) (ruling that the PTAB's decision that patent claims are indefinite was not

9    binding); *see also Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, 853 F.3d

10   1370, 1377 (Fed. Cir. 2017) (ruling that the PTAB's claim construction ruling was not

11   binding).  Although district courts "generally give deference to PTAB *inter partes* review

12   decisions based on the PTAB's specialized patent knowledge and expertise," *TMC Fuel*

13   *Injection Sys., LLC v. Ford Motor Co..*, No. CV 12-4971, 2016 WL 7155793, at *3 (E.D.

14   Pa. Apr. 20, 2016), *aff'd sub nom. TMC Fuel Injection Sys., LLC v. Ford Motor Co.*, 682

15   F. App'x 895 (Fed. Cir. 2017),[10] such deference is not warranted here.  The PTAB's

16   _____

17   patent itself—refutes those allegations as a matter of law.  882 F.3d at 1125.  Here, *Aatrix* simply
     underscores that the '915 Patent claims are devoid of any "improvements in the functioning and
18   operation of the computer" itself.  882 F.3d at 1127-28.  Instead, according to PTP, its inventive
     concept was increasing the "efficiencies" in filing taxes, which was a "cumbersome" and
     "time-consuming" process by adding a computer used as a tool.  (Resp. at 20; *see also* Compl.
19   ¶¶ 11-13 (describing "cumbersome and time-consuming" process of filing business tax returns,
     Mr. Pavlou's conception of a "technically innovative method and system for calculating,
20   preparing and filing state and local sales and use tax returns," and the development the "Pavlou
     SalesTax PRO" computer program)).  Thus, the court concludes that PTP fails to raise any
21   factual issues such as those that prevented dismissal in *Aatrix*.

22        [10] *See also Nat'l Oilwell DHT, L.P. v. Amega W. Servs., LLC,* No. 2-14-1020, 2019 WL
     1787250, at *8 (E.D. Tex. Apr. 24, 2019) ("Courts in this circuit . . . often give the PTAB

decision was limited.  (*See* Kurtenbach Decl. ¶ 6, Ex. 5 ("PTAB Decision").)  The PTAB

did not—as PTP asserts—"consider whether the patent claims were eligible patent

subject matter under 35 U.S.C. § 101" or "f[ind] the claims to be patent eligible."  (*See*

Resp. at 23; *see also* PTAB Decision at 6.)  Instead, the PTAB found the examiner's

summary and citation-free determination that the claims were abstract to be inadequate.

(PTAB Decision at 6.)  On this basis, the PTAB declined to "sustain the [e]xaminer's

rejection of [the] claims."  (*Id.*)  The court agrees with Avalara that, in this instance, the

PTAB's decision does not warrant deference concerning the larger question at issue:

whether the '915 Patent claims run afoul of Federal Circuit precedent interpreting the

two-part *Alice* test.  In answering that question, the court has evaluated the claims and

other materials from the '915 Patent in depth, applied the relevant case authority, and

determined that the claims cannot pass the *Alice* two-part test.  *See supra* § III.B.1-3.  The

PTAB Board's circumscribed decision does not undermine that result.

### 5. Summary

The court concludes that the '915 Patent claims fail the two-part *Alice* test, are

directed to an abstract concept, and therefore are not patentable.  Accordingly, the court

grants Avalara's motion to dismiss PTP's claim for patent infringement.  (*See* Compl.

¶¶ 55-60.)  The court dismisses this claim without leave to amend and with prejudice.[11]

_____

decision 'reasoned deference.'") (quoting *Ilife Techs., Inc. v. Nintendo of Am., Inc.*, No.
3:13-CV-04987-M, 2017 WL 525708, at *4 (N.D. Tex. Feb. 9, 2017)).

[11] Dismissal without leave to amend is appropriate only when the court is satisfied that
the deficiencies in the complaint could not possibly be cured by amendment.  *Jackson v. Carey*,
353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996));

**C.     Statutes of Limitations**

Avalara argues that the court should dismiss several of PTP's claims as time-barred.  (MTD at 27-29, 34-37.)  Specifically, Avalara argues that PTP's claims under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b), and the Wisconsin Uniform Trade Secrets Act ("WUTSA"), Wis. Stat. § 134.90, as well as PTP's breach of contract claim, are barred by the applicable statutes of limitations and subject to dismissal on that basis.  (MTD at 27-29, 34-37; *see also* Compl. ¶¶ 61-71, 78-81.)

Three-year statutes of limitations govern both the DTSA and the WUTSA.  *See* 18 U.S.C. § 1836(d) ("A civil action under subsection (b) may not commence more than 3 years after the date on which the misappropriation with respect to which the action would related is discovered or by the exercise of reasonable diligence should have been discovered.  For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation."); Wis. Stat. § 893.51(2) ("An action under § 134.90 [the WUTSA] shall be commenced within 3 years after the misappropriation of a trade secret is discovered or should have been discovered by the exercise of reasonable diligence.  A continuing misappropriation constitutes a single claim.").  The parties dispute whether California's four-year statute of limitations, *see* Cal. Civ. Proc. Code § 337, or Wisconsin's six-year statute of limitations, *see* Wis. Stat. § 893.43(1), should

//

---

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Here, no amendment can revive the eligibility of the '915 Patent.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile).  Accordingly, the court dismisses PTP's patent infringement claim without leave to amend.

apply to PTP's breach of contract claim.  (*Compare* MTD at 26-28 *with* Resp. at 27.)

The court need not decide the choice of law issue at this juncture because, as discussed

below, irrespective of which statute of limitations applies, PTP's breach of contract claim

is not subject to dismissal on statute of limitations grounds.  The same is true concerning

PTP's federal and state trade secrets claims.

Federal Rule of Civil Procedure 9(f) states that "[a]n allegation of time or place is

material when testing the sufficiency of a pleading."  Fed. R. Civ. P. 9(f).  PTP filed its

complaint on October 22, 2018.  (*See* Compl.)  PTP alleges that it "first learned of

Avalara's misappropriation of PTP's trade secrets, improper use of confidential

information, and breach of confidentiality in 2017, when an investor alerted Mr. Pavlou

that Avalara's products contained the very functionality that Mr. Pavlou had disclosed

under the Confidentiality Agreement to Avalara in 2011."  (Compl. ¶ 43.)  Despite this

allegation, Avalara argues that the court should dismiss PTP's claims federal and state

claims for trade secrets misappropriation and breach of contract because "PTP's

Complaint does not allege . . . that PTP could not have discovered the supposed

misappropriation and breach of contract by engaging in a reasonably diligent inquiry as

required."  (Reply (Dkt. # 19) at 9.)

Avalara misunderstands the import of Rule 9(f).  "Rule 9(f) does not require

specific allegations of time, but merely states that such allegations are material if they are

made."  *First Horizon Home Loans v. Centerpiece Mortg., LLC*, No.

CV-11-0995-PHX-JAT, 2011 WL 6178447, at *2 (D. Ariz. Dec. 9, 2011) (citing *Suckow*

*Borax Mines Consol. v. Borax Consol*., 185 F.2d 196, 204 (9th Cir. 1951)); *see also*

*Kuenzell v. United States*, 20 F.R.D. 96, 99 (N.D. Cal. 1957) ("Rule 9(f) does not have the effect of requiring allegations of time and place, but merely operates to make such allegations, if made, material for the purposes of testing the sufficiency of the pleading as against, for example, a motion to dismiss.").

The Ninth Circuit clarifies that when a motion to dismiss is based on the running of the statute of limitations, it can "be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). Here, PTP expressly alleges that it "first learned" of Avalara's misappropriation and breach in 2017. (Compl. ¶ 43.) Nothing in the complaint forecloses PTP from demonstrating that the applicable statutes of limitations should be tolled because PTP could not have discovered these acts earlier than 2017 through reasonably diligent inquiry.[12] (*See generally* Compl.) Indeed, "[g]enerally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003–04 (9th Cir. 2006) (footnote added). "A Rule 12(b)(6) challenge 'which tests

---

[12] At oral argument, counsel for Avalara argued that the court could rely on a statement in PTP's response to support dismissal based on the statute of limitations. Specifically, in its responsive memorandum, PTP stated that "Mr. Pavlou investigated and verified that Avalara's then-current products back to 2012 contained such functionality." (Resp. at 6.) But on a rule 12(b)(6) motion, the court does not ordinarily consider matters outside the pleadings. *See Lee,* 250 F.3d at 688. In cases where the statute of limitations defense cannot be resolved on a motion to dismiss, the defendant is of course free to raise the issue again, if appropriate, on a motion for summary judgment. *See Baldain v. Am. Home Mortg. Servicing, Inc.*, No. CIV S-09-0931 LKK/GGH, 2010 WL 56143, at *5 (E.D. Cal. Jan. 5, 2010).

the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is timebarred,' except for the 'relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint.'" *Anderson v. Teck Metals, Ltd*., No. CV-13-420-LRS, 2015 WL 59100, at *2 (E.D. Wash. Jan. 5, 2015) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir.2007)). Thus, the court cannot dismiss the complaint unless "[t]he facts necessary to determine the applicability of the discovery rule . . . clearly appear on the face of the complaint." *Id.* Here, they do not. Accordingly, the court denies Avalara's motion to dismiss PTP's state and federal trade secrets misappropriation claims and PTP's breach of contract claim as time-barred.[13]

//

---

[13] Avalara also argues that, pursuant to paragraph 10 of the confidentiality agreement, any confidentiality Avalara owed to PTP under the confidentiality agreement regarding PTP's information expired on August 1, 2014—three years after the August 1, 2011, date of the agreement. (*See* MTD at 29, 28; Reply at 16; *see also* Confidentiality Agreement ¶ 10.) As a result, Avalara argues that any confidentiality obligations it owed to PTP expired long before the applicable limitations periods. (*See* MTD at 29, 28; Reply at 16.) PTP counters that, under paragraph 4 of the agreement, Avalara also breached its obligation to promptly destroy or return all written information if it decided not to proceed with the transaction, and the three-year expiration period of paragraph 10 is not applicable to this requirement. (Resp. at 28.) Avalara replies that PTP does not allege that Avalara ever provided a notice of destruction to PTP, and the lack of such a notice should have alerted PTP to a potential breach. (Reply at 16.) However, whether and when Avalara provided such a document destruction notice to PTP and whether that notice or lack thereof should have reasonably alerted PTP concerning its claims are highly factual issues that the court is unwilling to resolve in the context of a motion to dismiss. Further, although the agreement appears to terminate any confidentiality obligations after three years, the court notes that paragraph 1(ii) also describes Avalara's obligations to "not use" the information at issue "other than in connection with the [t]ransaction." (*See* Confidentiality Agreement at 2.) Arguably, this obligation to "not use" the information is distinct from Avalara's confidentiality obligation and, if so, it arguably did not expire on August 1, 2014. The court does not make any rulings in the context of Avalara's motion to dismiss concerning how the confidentiality agreement should be interpreted. It only references these provisions to emphasize how factually intensive these statute of limitations issues are, and therefore, that it would be inappropriate to resolve them in the context of this motion to dismiss.

**D.  WUTSA**

Avalara also moves to dismiss PTP's claim under the WUTSA on grounds that PTP's claim is beyond the territorial reach of the WUSTA.  (MTD at 31-33.)  According to Avalara, because PTP's complaint does not allege that the accused conduct "had 'significant adverse effects' on the citizens of Wisconsin," the presumption against the extraterritorial application of statutes requires dismissal of PTP's state misappropriation of trade secrets claim under the uniform act.  (*See id.* at 24 (quoting *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959, 972 (E.D. Wis. 1998)).)  The court disagrees.

The federal system is one of notice pleading.  *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (2002).  Rule 8's liberal notice pleading standard "requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, --- F.3d ----, 2019 WL 4230097, at *6 (9th Cir. Sept. 6, 2019) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), *overruled in part on other grounds by Twombly*, 550 U.S. 544).  However, "[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case."  *Id.* (quoting *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786 (9th Cir. 1982)).  Further, the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014).

Avalara's extraterritoriality argument founders on these fundamental principles of notice pleading.  Avalara does not argue that PTP has failed to allege facts supporting the

elements of a claim for trade secret misappropriation under the WUTSA or any other state's uniform trade secrets act. (*See generally* MTD.) Instead, Avalara seizes on PTP's citation of the WUTSA and argues that this is fatal to PTP's claim. (*See id.* at 31-33.) Avalara misunderstands the inquiry on a Rule 12(b)(6) motion. The question is not whether PTP has identified the correct legal theory or statute for obtaining relief on the facts alleged. Indeed, as noted above, PTP need not plead a legal theory at all. *See Glaser*, --- F.3d ----, 2019 WL 4230097, at *6. Rather, the question is whether PTP has provided Avalara fair notice and stated a claim with "sufficient factual matter" to demonstrate "that it is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). With respect to PTP's misappropriation claim, Avalara has not asserted otherwise. (*See generally* MTD.)

Avalara's extraterritoriality claim is really a choice-of-law argument in disguise. This case was originally filed in federal district court in the Eastern District of Wisconsin. (*See generally* Compl.) Upon Avalara's motion under 28 U.S.C. § 1404(a), the Wisconsin federal district court subsequently transferred the case to federal district court in the Western District of Washington. (*See* 4/30/19 Order (Dkt. # 25).) In addition, the parties' confidentiality agreement contains a California choice of law provision. (Confidentiality Agreement ¶ 9); *see supra* n.4. All three states have adopted versions of the Uniform Trade Secrets Act. *See* RCW ch. 19.108; Wis. Stat. 134.90; Cal. Civ. Code § 3426.1 *et seq*. Thus, Avalara is correct that, at this stage in the litigation, it is unclear whether Wisconsin law applies to PTP's state uniform trade secrets act claim. Because choice-of-law "is fact-intensive inquiry that 'does not lend itself readily to disposition on

a [Rule] 12(b)(6) motion,'" *Kaspers v. Howmedica Osteonics Corp.*, No. C15-0053JLR, 2015 WL 12085853, at *11 (W.D. Wash. Oct. 23, 2015) (quoting *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 331 P.3d 29, 36 n.12 (Wash. 2014)), the court finds it inappropriate to address that issue at this juncture. Accordingly, the court denies Avalara's motion to dismiss PTP's claim under the Uniform Trade Secrets Act.

**E.    Unfair Competition**

PTP asserts a claim for "unfair competition" based on a statute that is colloquially known as Wisconsin's Little Fair Trade Commission Act, Wis. Stat. § 100.20. (*See* Compl. ¶ 73 ("Wisconsin state law provides a private right of action for unfair competition." (citing Wis. Stat. §100.20))); *see also Reusch v. Roob*, 610 N.W. 2d 168, 176 (Wis. 2000). Avalara moves to dismiss this claim arguing that the provision provides no private right of action for PTP's claim. (MTD at 25-26.) The court agrees.

The court first examines the statutory framework at issue. PTP asserts that it brings its unfair competition claim under Section 100.20(1t), which provides:

> It is an unfair trade practice for a person to provide any service which the person has the ability to withhold that facilitates or promotes an unfair method of competition in business, an unfair trade practice in business, or any other activity which is a violation of this chapter.

Wis. Stat. § 100.20 (1t). Under Section 100.20(2)(a), the Department of Agriculture, Trade and Consumer Protection ("the Department") may issue "general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair." *Id*. § 100.20(2)(a). Under Section 100.20(3),

//

1 the Department may also issue "special orders" against an individual enjoining or

2 requiring certain methods of competition. *See id.* § 100.20(3).

3       Section 100.20(5), which delineates the specific parameters of a private right of

4 action under the chapter, provides as follows:

5       Any person suffering pecuniary loss because of a violation by any other
      person of s. 100.70 or any order issued under this section may sue for
6       damages therefor in any court of competent jurisdiction and shall recover
      twice the amount of such pecuniary loss, together with costs, including a
7       reasonable attorney fee.

8 *Id.* § 100.20(5). Violations of Section 100.70 relate to the misuse of titles reserved for

9 persons and/or businesses involved with professions in health or hazardous materials

10 occupations. *See id.* § 100.70. Thus, under the plain language of the statute the only

11 circumstances in which a plaintiff may bring a private cause of action pursuant to Section

12 100.20 relate to circumstances either involving (1) a violation of Section 100.70 or (2) a

13 violation of a general or special order issued pursuant to Sections 100.20(2)(a) or

14 100.20(3). Neither of the circumstances required under Section 100.20(5) to bring a

15 private cause of action is alleged in PTP's complaint. (*See generally* Compl.) In

16 *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 971-72 (E.D. Wis. 1998),

17 the district court for the Eastern District of Wisconsin engaged in a thorough statutory

18 analysis of the preceding version of the statute at issue and reached a similar conclusion

19 concerning the circumscribed nature of the private right of action under Section

20 100.20(5). *See also In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL

21 3754041, at *10 (N.D. Ill. Nov. 5, 2009) (relying on *Emergency One* and reaching the

22 same conclusion).

PTP nevertheless asserts that it may bring a private cause of action based on a Wisconsin Court of Appeals decision. (*See* Resp. at 31-32 (citing *Reusch*, 610 N.W. 2d at 176-77).) In *Reusch*, the Wisconsin Court of Appeals concluded without analysis of statutory language or framework that "a private remedy" was available for any person "sustaining a pecuniary loss resulting from unfair competitive or trade practices." *Reusch*, 610 N.W. 2d at 177. PTP asserts that in the absence of a decision from the Wisconsin Supreme Court on this issue, the court is bound by the decision of the inferior state court in *Reusch*. (*See* Resp. at 32.) The court disagrees.

"When interpreting state law, federal courts are bound by decisions of the state's highest court. 'In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) (quoting *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990)). In the absence of convincing evidence that the state supreme court would decide differently, "a federal court is obligated to follow the decisions of the state's intermediate courts." *Kirkland*, 915 F.2d at 1239.

Here, the court finds convincing evidence sufficient to warrant a departure from *Reusch*. First, unlike the federal district court in *Emergency One*, the *Reusch* court does not address any of the general statutory framework or the particular limitations contained in Section 100.20(5). *See Reusch*, 610 N.W. 2d at 176-77. Instead, the *Reusch* court arrives at its conclusion that a general "private remedy" is "available to any person sustaining a pecuniary loss resulting from unfair competitive or trade practices" in a

conclusory manner.  *Compare Reusch*, 610 N.W. 2d at 177, *with Emergency One*, 23 F.

Supp. 2d at 971-72.  Moreover, the Wisconsin legislature's 2017 amendment of Section

100.20(5) to add a right of action for the violation of another particular statutory

provision (Section 100.70) evinces the Wisconsin legislature's intent not to provide a

general private right of action.[14]  The amendment to include a cause of action for a

violation of Section 100.70 would be unnecessary if, as the *Reusch* court concluded, the

statue already provided for a general private right of action.  *See Reusch*, 610 N.W. 2d at

177.  Accordingly, the court declines to follow *Reusch*, grants PTP's motion on this

claim, and dismisses PTP's claim for unfair competition under Section 100.20 of

Wisconsin law (*see* Compl. ¶¶ 72-77) without leave to amend and with prejudice.[15]

## IV.  CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part

Avalara's motion to dismiss (Dkt. ## 8, 9).  Specifically, the court GRANTS Avalara's

motion to dismiss PTP's claims for patent infringement and for unfair competition under

//

---

[14] The pre-November 28, 2017, version of Section 100.20(5), stated as follows:

Any person suffering pecuniary loss because of a violation by any other person of
any order issued under this section may sue for damages therefor in any court of
competent jurisdiction and shall recover twice the amount of such pecuniary loss,
together with costs, including a reasonable attorney's fee.

Wis. Stat. Ann. § 100.20(5) (1997).

[15] Because there is no general private right of action under Section 100.20(5), the court
concludes that any amendment of PTP's claim under Section 100.20(1t) would be futile.
Accordingly, the court grants dismissal of this claim without leave to amend.  *See Cervantes*, 656
F.3d at 1041 (explaining that dismissal without leave to amend is proper when amendment
would be futile).

Wis. Stat. § 100.20 (*see* Compl. ¶¶ 55-60, 72-77) and DENIES the remainder of Alavara's motion.  The court DISMISSES WITH PREJUDICE and without leave to amend PTP's claims for patent infringement and unfair competition.

Dated this 27th day of September, 2019.

_____
JAMES L. ROBART
United States District Judge