1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
                            AT SEATTLE

9

10   PTP ONECLICK, LLC,                        CASE NO. C19-0640JLR

11                        Plaintiff,           ORDER ON DEFENDANT'S
                                               SUMMARY JUDGMENT
            v.                                 MOTION
12                                             **(PROVISIONALLY FILED
     AVALARA, INC.,                            UNDER SEAL)[1]**
13
                         Defendant.
14

15                        **I.    INTRODUCTION**

16          Before the court is Defendant Avalara, Inc.'s ("Avalara") motion for summary

17   judgment on Plaintiff PTP OneClick, LLC's ("PTP") remaining claims for (1) trade

18   //

19   _____

20          [1] Because the court has referenced exhibits in this order that the parties have placed under
     seal and that may describe information that PTP asserts constitutes its trade secrets, the court has
     provisionally filed this order under seal.  If either party believes that the court's order, or a
21   portion thereof, should remain under seal, that party shall file a motion within seven (7) days of
     the filing date of this order justifying the continued sealing of this order under the
     appropriate standards set forth in the court's local rules and Ninth Circuit authority.  If neither party files
22   such a motion, the court will unseal this order.

1   secret misappropriation in violation of the federal Defend Trade Secrets Act ("DTSA"),

2   18 U.S.C. § 1836(b); (2) trade secret misappropriation in violation of the state Uniform

3   Trade Secret Act ("UTSA"), RCW ch. 19.108; and (3) breach of the parties'

4   confidentiality agreement ("Confidentiality Agreement").  (*See* MSJ (Dkt. ## 101

5   (redacted); 102 (sealed)); *see also* Compl. (Dkt. # 1) ¶¶ 61-66 (alleging DTSA claim),

6   67-71 (alleging UTSA claim), 78-81 (alleging breach of contract claim).)  Specifically,

7   Avalara argues that the limitations period for each of PTP's remaining claims expired

8   long before PTP filed its October 22, 2018, complaint.  (*See generally* MSJ.)  PTP

9   opposes Avalara's motion.  (Resp. (Dkt. # 119).)  The court has considered Avalara's

10  motion, the parties' submissions filed in support of and in opposition to the motion, the

11  relevant portions of the record, and the applicable law.  Being fully advised,[2] the court

12  GRANTS Avalara's motion for summary judgment on each of PTP's remaining claims.

## II.   BACKGROUND

14      PTP is a small accounting firm dedicated to serving small and medium sized

15  businesses.  (Compl. ¶¶ 2, 8; *see also* 3/23/20 Pavlou Decl. (Dkt. # 121) ¶ 13.)  PTP

16  developed software to automate calculating, preparing, and filing state and local sales and

17  use tax returns for its customers.  (Compl. ¶¶ 12-13; *see also* 3/23/20 Pavlou Decl. ¶ 3

18  ("PTP's product, a tax form preparation and filing system, is directed to calculations for

19  //

20

21      [2] Avalara requests oral argument.  (MSJ at title page.)  The court does not consider oral
    argument to be helpful to its decisional process and therefore denies Avalara's request.  *See*
22  Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will
    be decided by the court without oral argument.").

1    preparation of sales tax returns at the end of a particular tax reporting period as applicable

2    to brick and mortar clients . . . .").)

3         In March 2011, PTP engaged Seven Hills Partners, LLC ("Seven Hills"), a San

4    Francisco investment bank, to help identify companies that might be interested in buying

5    PTP.  (*See* 3/5/20 Byer Decl. (Dkt. ## 103 (redacted), 104 (sealed)) ¶¶ 4-5, Exs. 3-4; *see*

6    *also* 3/23/20 Pavlou Decl. ¶ 5 ("[PTP] initiated an effort to find an outside investor or

7    buyer . . . in 2011.").)  In July 2011, William Wisialowski of Seven Hills contacted

8    Avalara to discuss Avalara's possible acquisition of PTP.  (3/5/20 Byer Decl. ¶ 11, Ex.

9    10.)

10        Like PTP, Avalara is also in the business of selling tax calculation and preparation

11   software, and Avalara expressed an interest in acquiring PTP or PTP's tax preparation

12   software.  (*See* Compl. ¶¶ 14-15.)  PTP and Avalara initiated discussions concerning a

13   potential business relationship, and the parties met in Avalara's Washington State office

14   on August 2, 2011.  (*Id.* ¶¶ 14, 16.)

15        The day before the meeting, PTP and Avalara executed a Confidentiality

16   Agreement.  (*See id.* Ex. 2 ("Confidentiality Agreement").)  In it, Avalara agreed not to

17   "use any [PTP confidential] Information other than in connection with the Transaction."[3]

18   //

19
20        [3] Under the Confidentiality Agreement, the term "Transaction" is defined as Avalara's
     "interest in the possible acquisition" of PTP.  (Confidentiality Agreement at 1.)  The term
21   "Information" is defined as "[a]ll . . . information (whether written or oral) furnished (whether
     before or after the date hereof) by [PTP] . . . to [Avalara] . . . and all analyses, compilations,
22   forecasts, studies or other documents prepared by [Avalara] . . . in connection with
     [Avalara's] . . . review of, or [Avalara's] interest in, the Transaction which contain or reflect any
     such information . . . ."  (*Id.*)

ORDER - 3

1    (*Id.* ¶ 1.)  If Avalara "determine[d] not to proceed with the Transaction," the

2    Confidentiality Agreement required Avalara to "promptly inform Seven Hills . . . of that

3    decision," and to either "promptly destroy all copies" of the written information PTP

4    provided to Avalara and to "confirm such destruction to [PTP] in writing" or to

5    "promptly deliver" to PTP "all copies of [PTP's] written Information" in Avalara's

6    possession.  (*See id.* ¶ 4.)

7            According to PTP, Mr. Pavlos Pavlou, PTP's founder and Chief Executive

8    Officer, disclosed to Avalara a number of PTP's trade secrets during and after the August

9    2, 2011, meeting.  (3/5/20 Byer Decl. ¶ 14, Ex. 13 at 3-14; *see also* 3/23/20 Pavlou Decl.

10   ¶ 1; Compl. ¶¶ 8, 19, 22, 24.)  For example, PTP maintains that Mr. Pavlou disclosed a

11   trade secret related to the use of Universal Product Codes ("UPCs") in his software or

12   method.  (3/5/20 Byer Decl. ¶ 14, Ex. 13 at 13.)  PTP states that part of Mr. Pavlou's

13   trade secret "vision" included using UPCs for a product to determine the applicable sales

14   and use tax.  (*Id.*)  "Therefore, upon the sale of a good, the UPC code would link the

15   good to a certain line item category, which . . . would automatically link it to a specific

16   tax rate of the appropriate taxing authority."  (*Id.*)

17           On April 16, 2012, Mr. Wisialowski sent an email to Mr. Pavlou informing him

18   that "at this time, [Avalara] do[es] not have an interest in continuing discussions

19   regarding any transaction."  (*Id.* ¶ 15, Ex. 14.)  Mr. Pavlou responded in an email later

20   that day, "Thanks for the update."  (*Id.*)  The next day, Mr. Wisialowski terminated Seven

21   Hills's services agreement with PTP, although Mr. Wisialowski noted that Seven Hill

22   would still be entitled to compensation "in the event [PTP] complete[d] a transaction by

1    December 31, 2012." (*Id.* ¶ 16, Ex. 15.)  Despite informing PTP—through Mr.

2    Wisialowski—that Avalara did not have an interest in continuing discussions regarding a

3    business deal, Avalara did not return PTP's confidential information, assure PTP that it

4    had destroyed PTP's confidential information, or ever seek relief from PTP from its

5    contractual obligation to do one or the other.  (*See id.* ¶ 2, Ex. 1 at 3.)

6         In his complaint Mr. Pavlou expressly alleges that "[i]n April 2012, Avalara

7    informed PTP that it was no longer interested in a business deal with PTP."  (Compl.

8    ¶ 26.)  Nevertheless, Mr. Pavlou now attests that he understood Mr. Wisialowski's April

9    16, 2012, email to mean "that, notwithstanding the absence of a timeline, Avalara . . .

10   continued to consider a potential agreement with PTP at some unspecified point in the

11   future." (*See* 3/23/20 Pavlou Decl. ¶ 10; *see also* 3/5/20 Byer Decl ¶ 15, Ex. 14.)  Indeed,

12   in apparent contravention to the allegation in his complaint, Mr. Pavlou now attests that

13   Mr. Wisialowski's email did not lead him to believe "that the possibility of a deal with

14   Avalara was terminated."  (3/23/20 Pavlou Decl. ¶ 10.)

15        In January 2013, Mr. Pavlou received another email from Mr. Wisialowski, in

16   which Mr. Wisialowski attached a news article reporting that Avalara had acquired the

17   "world's largest database of [UPCs]."  (3/5/20 Byer Decl. ¶ 17, Ex. 16.)  In commenting

18   on the attached article, Mr. Wisialowski stated:  "FYI.  They are doing something . . ."

19   (*Id.* (ellipsis in original).)  The next day, Mr. Pavlou emailed Mr. Scott Graflund, a

20   business advisor of PTP and one of the August 2, 2011, meeting attendees, stating,

21   "Avalara is hooked on PTP. . . .  That's why they acquired the database of product

22   codes."  (*Id.* ¶ 18, Ex. 17.)  Mr. Pavlou attests that his email to Mr. Graflund "reflects

[his] belief that Avalara remained interested in PTP and related technologies and that negotiations between the two companies could possibly resume or otherwise continue at some point in the future." (3/23/20 Pavlou Decl. ¶ 11.) Indeed, Mr. Pavlou testfies that he "viewed the acquisition of [UPCs] by Avalara as potentially representing steps taken in preparation by Avalara for a merger with PTP." (*Id.*)

In March 2014, Avalara issued a press release and white paper advertising that it had added new UPC functionality into AvaTax (*see* Kushniruk Decl. (Dkt. # 105) ¶¶ 3-4, Exs. 1-2), which is one of the Avalara products that PTP now claims includes PTP's misappropriated trade secrets (3/5/20 Byer Decl ¶ 14, Ex. 13 at 20 ("Avalara incorporated PTP's Trade Secrets . . . into at least the versions of Avalara AvaTax . . . that were marketed by Avalara after discussions with PTP . . . .")). The press release announced that AvaTax would now include automated UPC mapping that allowed for "rapid sales tax results based on millions of pre-mapped [UPCs] . . . , which includes specialized sales taxability data at the SKU or item level." (Kushniruk Decl. ¶ 2, Ex. 1.)

On October 22, 2018, PTP filed suit against Avalara asserting, among other claims,[4] trade secret misappropriation under the state UTSA and the federal DTSA and breach of contract. (*See* Compl. ¶¶ 61-66 (alleging DTSA claim), 67-71 (alleging UTSA claim), 78-81 (alleging breach of contract claim).) Avalara moves for summary judgment

//

//

---

[4] On September 27, 2019, the court dismissed with prejudice PTP's other claims for patent infringement and unfair competition. (9/27/19 Order (Dkt. # 54) at 33.)

1    of these claims on grounds that the relevant statutes of limitation have expired.[5]  (*See*

2    *generally* MSJ.)  The court now considers Avalara's motion.

### III.    ANALYSIS

**A.    Summary Judgment Standards**

5          Summary judgment is proper when the pleadings, discovery, and other materials

6    on file, including any affidavits or declarations, show that "there is no genuine issue as to

7    any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

8    Civ. P. 56(a); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir.

9    2005).  To satisfy its burden at summary judgment, a moving party with the burden of

10   persuasion "must establish beyond controversy every essential element of its . . . claim."

11   *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal

12   quotation marks and citation omitted).  By contrast, a moving party without the burden of

13   persuasion "must either produce evidence negating an essential element of the

14   nonmoving party's claim or defense or show that the nonmoving party does not have

15   enough evidence of an essential element to carry its ultimate burden of persuasion at

16   trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th

17   Cir. 2000) (citing *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563,

18   574 (9th Cir. 1990)).  "If the party moving for summary judgment meets its initial burden

19

20          [5] In its motion, Avalara asserts various facts in support of the notion that PTP's delay in
     filing suit until 2018 resulted in prejudice to Avalara.  (*See* MSJ at 5-6.)  The court agrees with
21   PTP that these facts are not material to the issue of whether the applicable statutes of limitation
     expired prior to the filing of PTP's complaint.  Accordingly, the court does not consider these
22   facts or any dispute between the parties concerning these facts in its analysis of Avalara's
     motion.

ORDER - 7

1  of identifying for the court the portions of the materials on file that it believes

2  demonstrate the absence of any genuine issue of material fact, the nonmoving party may

3  not rely on the mere allegations in the pleadings in order to preclude summary judgment[,

4  but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts

5  showing that there is a genuine issue for trial." T.*W. Elec. Serv., Inc*., 809 F.2d at 630

6  (internal citations and quotation marks omitted) (citing, among other cases, *Celotex Corp.*

7  *v. Catrett*, 477 U.S. 317, 106 (1986)).

8      In Washington, where a defendant moves for summary judgment on the basis of

9  an affirmative defense such as the statute of limitations, the defendant bears the initial

10 burden of proving the absence of a material issue of fact as to that defense.  *Precision*

11 *Airmotive Corp. v. Rivera*, 288 F. Supp. 2d 1151, 1153 (W.D. Wash. 2003) (citing

12 *Haslund v. City of Seattle*, 547 P.2d 1221, 1230 (Wash. 1976)).  Where, however, a

13 plaintiff invokes the discovery rule to counter the statute of limitations defense, the

14 plaintiff bears the burden to show facts demonstrating that the cause of action was not

15 discovered or could not have been discovered by due diligence within the limitations

16 period.  *Precision Airmotive*, 288 F. Supp. 2d at 1153 (citing *G.W. Constr. Corp. v. Prof'l*

17 *Serv. Indus., Inc*., 853 P.2d 484, 488 (Wash. Ct. App.1993) & *Giraud v. Quincy Farm*

18 *and Chem*., 6 P.3d 104, 109 (Wash. Ct. App. 2000) ("To invoke the discovery rule, the

19 plaintiff must show that he or she could not have discovered the relevant facts earlier.")).

20     Where summary judgment is based on an application of the statute of limitation,

21 the motion should be granted only if the record demonstrates that there is no genuine

22 factual issue as to the commencement of the statutory period.  *McLeod v. Nw. Alloys,*

1  *Inc.*, 969 P.2d 1066, 1069 (Wash. Ct. App.1998).  When a plaintiff discovers the facts

2  giving rise to a cause of action, or whether a plaintiff has exercised reasonable diligence

3  to discover the action, is generally a question of fact; but if reasonable minds could not

4  differ, then it is a question of law.  *Cawdry v. Hanson Baker Ludlow Drumheller*, PS, 120

5  P.3d 605, 609 (Wash. Ct. App.2005) (citing *Goodman v. Goo*dman, 907 P.2d 290, 294

6  (Wash. 1995)); *Orr v. Bank of Am., NT,* 285 F.3d 764, 780 (9th Cir. 2002) ("[W]hen

7  uncontroverted evidence proves that the plaintiff discovered or should have discovered

8  the facts giving rise to the claim, such a determination can be made as a matter of law.")

9  (internal citations and quotations omitted).

10  **B.     Applicable Statutes of Limitation**

11       PTP has three remaining claims in this lawsuit, each arising from the allegation

12  that Avalara impermissibly retained or used confidential information PTP provided under

13  the parties' Confidentiality Agreement.  PTP alleges (1) trade secret misappropriation in

14  violation of the DTSA, (2) trade secret misappropriation under the UTSA, and (3) breach

15  of the parties' 2011 Confidentiality Agreement.  (*See* Compl. ¶¶ 61-71, 78-81.)

16       There is no dispute that a three-year statute of limitations governs the DTSA.  *See*

17  18 U.S.C. § 1836(d).  Likewise, a three-year statute of limitations governs the UTSA.

18  *See* RCW 19.108.060.[6]  Both of these statutes expressly incorporate a discovery rule

19

20       [6] PTP initially filed this action in the federal district court for the Eastern District of
    Wisconsin and alleged its UTSA claim under the Wisconsin UTSA, Wis. Stat. § 134.90.  (*See*
21  Compl. ¶¶ 67-71.)  The court previously recognized that PTP could bring its claim under
    Washington's UTSA and whether Washington or Wisconsin law applied to PTP's UTSA claim
    was fundamentally a choice of law issue.  *See PTP OneClick, LLC v. Avalara, Inc.*, 413 F. Supp.
22  3d 1050, 1067-68 (W.D. Wash. 2019).  Here, the parties rely primarily on Washington law in

applicable to each three-year limitations period.  *See* 18 U.S.C. § 1836(d) ("A civil action

under subsection (b) may not commence more than 3 years after the date on which the

misappropriation with respect to which the action would relate is discovered or by the

exercise of reasonable diligence should have been discovered."); RCW 19.108.060 ("An

action for misappropriation must be brought within three years after the misappropriation

is discovered or by the exercise of reasonable diligence should have been discovered.").

Avalara asserts that California's four-year statute of limitations applies to PTP's

contract claim.  (MSJ at 8-9.)  The Confidentiality Agreement states that it is "governed

by and construed in accordance with the laws of the State of California . . . without giving

effect to principles of conflicts of law."  (Confidentiality Agreement ¶ 9.)  As Avalara

points out, the court's analysis begins with Wisconsin choice of law rules because PTP

---

analyzing PTP's UTSA claim and neither party argues that there is any conflict between the law of Wisconsin and Washington concerning the statute of limitations on PTP's UTSA claim. Indeed, the Wisconsin and Washington statutory provisions concerning the limitations period are nearly identical.  Like the Washington UTSA, a three-year limitations period also governs the Wisconsin UTSA and the statutory provision incorporates a discovery rule.  *Compare* Wis. Stat. § 893.51(2) ("An action under § 134.90 [the Wisconsin UTSA] shall be commenced within 3 years after the misappropriation of a trade secret is discovered or should have been discovered by the exercise of reasonable diligence.") *with* RCW 19.108.060 ("An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.").  Other than noting the similarity between the limitations provisions in the Wisconsin and Washington UTSAs (*see* MSJ at 8), neither Avalara nor PTP further rely on Wisconsin law in making their respective arguments (*see generally* MSJ; Resp.; Reply).  In any event, both Washington and Wisconsin seek to construe their respective UTSAs in harmony with other jurisdictions to promote uniformity.  *See Ill. Tool Works Inc. v. Seattle Safety LLC*, No. C07-2061JLR, 2008 WL 11343004, at *2 (W.D. Wash. Dec. 17, 2008) (citing *Thola v. Henschell*, 164 P.3d 524, 528 (Wash. Ct. App. 2007)); *see also* Wis. Stat. Ann. § 134.90 ("This section shall be applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws."). The court therefore concludes that application of Wisconsin law would not make a difference in the parties' respective positions or in the outcome of Avalara's motion.  Accordingly, the court does not consider Wisconsin law further in deciding Avalara's motion.

filed this action in Wisconsin before transfer to the Western District of Washington under

28 U.S.C. § 1404(a).  (*See* MSJ at 8 (citing *Ferrens v. John Deere Co*., 494 U.S. 516, 531

(1990)).)  Avalara argues that an analysis of Wisconsin choice of law rules demonstrates

that Wisconsin "would . . . give effect to the California statute of limitations" for written

contracts, which contains a four-year limitations period.  (*See* MSJ at 8-9); *see also* Cal.

Civ. Proc. Code § 667.  PTP does not challenge Avalara's analysis concerning the

limitations period applicable to its breach of contract claim.  (*See generally* Resp.; *see*

*also* Reply (Dkt. # 125) at 1 ("PTP does not dispute that three- and four-year statutes of

limitations govern its trade secret and breach of contract claims.").)  The court agrees

with Avalara's analysis and applies California's four-year statute of limitations to PTP's

breach of contract claim.  In addition, California courts incorporate a discovery rule into

the four-year limitations period for breach of contract claims "where the plaintiff is

unable to see or appreciate a breach has occurred."  *William L. Lyon & Assocs., Inc. v.*

*Superior Court*, 139 Cal. Rptr. 3d 670, 680 (Cal. Ct. App. 2012), *as modified on denial of*

*reh'g* (May 11, 2012) (quoting *Moreno v. Sanchez*, 131 Cal. Rptr. 2d 684, 689 (Cal . Ct.

App. 2003)).  "These sorts of situations include . . . breaches of contract committed in

secret."  *Id.* (quoting Moreno, 131 Cal. Rptr. 2d at 689) (italics omitted).

PTP does not challenge the application of the three-year statutes of limitations to

its DTSA and UTSA claims, nor the application of California's four-year statute of

limitations to its breach of contract claim.  (*See generally* Resp.; *see also* Reply at 1

("PTP does not dispute that three- and four-year statutes of limitations govern its trade

secret and breach of contract claims.").)  Accordingly, the court applies a three-year

1  limitations period to PTP's trade secret claims and a four-year limitations period to PTP's

2  breach of contract claim.

3  **C.  The Applicable Statutes of Limitations Bar PTP's Remaining Claims**

4  PTP filed suit on October 22, 2018.  (*See* Compl.)  Thus, if PTP's contract claim

5  accrued prior to October 22, 2014, and PTP's trade secrets claims under the DTSA and

6  the UTSA accrued prior to October 22, 2015, then those claims are barred by the

7  applicable statutes of limitation.  *See supra* § III.B.  PTP argues that it did not learn of

8  Avalara's alleged breach of the Confidentiality Agreement or Avalara's alleged

9  misappropriation of its trade secrets until 2017.  (*See* Compl. ¶ 43 ("PTP first learned of

10  Avalara's misappropriation of PTP's trade secrets, improper use of confidential

11  information, and breach of confidentiality in 2017 . . . ."); *see also* 3/23/20 Pavlou Decl.

12  ¶ 14 ("PTP did not learn of Avalara's misappropriation of PTP's trade secrets until

13  2017 . . . .").)  Thus, PTP argues that its remaining claims are timely.  (*See generally*

14  Resp.)

15  Avalara argues that, despite PTP's assertions that it did not discover its claims

16  until 2017, PTP should have discovered the basis for its claims years earlier based on

17  three events:  (1) Avalara's failure to return or confirm its destruction of PTP's allegedly

18  confidential information, as required under the parties' Confidentiality Agreement,

19  following Avalara's April 2012, notice to PTP that it was no longer interested in pursuing

20  a business agreement with PTP; (2) PTP's receipt of a January 2013, email from its

21  investment banker alerting PTP to Avalara's purchase of a large database of UPCs related

22  to PTP's allegedly misappropriated trade secrets; and (3) Avalara's March 2014 press

1    release and white paper announcing Avalara's use of that database in a product that PTP

2    now accuses of misappropriation.  (*See generally* MSJ.)  As set forth below, the court

3    concludes that there is no genuine issue of material fact that the statutory periods for all

4    of PTP's remaining claims expired before PTP filed suit on October 22, 2018.

5        1.  The Discovery Rule

6        The court begins with an examination of the discovery rule, which is applicable to

7    all of PTP's claims.  *See supra* § III.B.  Generally, a cause of action accrues when the

8    plaintiff "knew or should have known the essential elements of the cause of action."

9    *McLeod*, 969 P.2d at 1069 (citing *Allen v. State*, 826 P.2d 200, 203 (Wash. 1992)).

10   Nevertheless, "[t]he key consideration under the discovery rule is the factual, not the

11   legal, basis for the cause of action."  *Allen*, 826 P.2d at 203.  "The cause of action accrues

12   when the claimant knows or should know the relevant facts, 'whether or not the plaintiff

13   also knows that these facts are enough to establish a legal cause of action.'"  *McLeod*,

14   969 P.2d at 1069-70 (quoting Allen, 826 P.2d at 203).  The discovery rule postpones

15   accrual only until the time that the plaintiff should have discovered the basis of the cause

16   of action.  *See Interlake Porsche & Audi, Inc. v. Bucholz*, 728 P.2d 597, 607 (Wash. Ct.

17   App. 1986).

18       PTP argues that mere suspicions and fears are insufficient to trigger the statutory

19   period and that "demonstration that a claim ha[s] accrued in the first place" is a necessary

20   prerequisite to application of the discovery rule.  (*See* Resp. at 10.)  The court agrees that

21   mere suspicion is insufficient to trigger the discovery rule; indeed, the suspicion that a

22   wrongful act has occurred must be reasonable.  *Beard v. King Cty.*, 889 P.2d 501, 504

1    (Wash. Ct. App. 1995) ("An injured claimant who reasonably suspects that a specific

2    wrongful act has occurred is on notice that legal action must be taken.").  In addition,

3    neither conclusive proof of wrongful conduct nor a smoking gun is required to commence

4    the limitations period.  *Id.*  Further, once a plaintiff has notice sufficient to excite the

5    plaintiff's attention and put the plaintiff on guard, the plaintiff is charged with notice of

6    everything to which an inquiry might lead.  *Interlake Porsche & Audi, Inc*., 728 P.2d at

7    607 (quoting *Sherbeck v. Lyman's Estate*, 552 P.2d 1076, 1079 (Wash. Ct. App. 1976));

8    *Corliss v. Hartge*, 42 P.2d 44, 46 (Wash. 1935).

9                    2.  PTP's Breach of Contract Claim

10           Given these precepts, the court first examines PTP's breach of contract claim.

11   Avalara argues that PTP was first placed on inquiry notice that Avalara breached the

12   Confidentiality Agreement when Avalara notified PTP in April 2012—through Mr.

13   Wisialowski—that Avalara no longer had an interest in discussing any business

14   transaction with PTP.  (*See* 3/5/20 Byer Decl. ¶ 15, Ex. 14.)  Avalara argues that the April

15   2012 notice triggered Avalara's duty under the Confidentiality Agreement to either return

16   PTP's confidential information or assure PTP that Avalara had destroyed it.  (*See*

17   Confidentiality Agreement ¶ 4.)  Because Avalara did neither (*see* 3/5/20 Byer Decl. ¶ 2,

18   Ex. 1 at 3), Avalara argues that PTP was on inquiry notice of PTP's breach of contract

19   //

20   //

21   //

22   //

1  claim no later April 2012, and accordingly, this claim is barred by California's four-year

2  statute of limitations (*see* MSJ at 10).[7]

3          PTP responds that it did not interpret the message that Avalara delivered through

4  Mr. Wisialowski as triggering Avalara's duty under the Confidentiality Agreement to

5  either return or destroy its confidential information because Mr. Wisialowski prefaced

6  Avalara's message with the phrase—"at this time." (*See* Resp. at 10, 12.)  PTP argues

7  that as a result it did not interpret Avalara's message as a "termination" of negotiations

8  (*see id.* at 10) and that a "reasonable inference from that language is that Avalara may, in

9  the future, wish to continue discussions" (*id.* at 12; *see also* 3/23/20 Pavlou Decl. ¶ 10 ("I

10  took this to mean that, notwithstanding the absence of a timeline, Avalara . . . continued

11  to consider a potential agreement with PTP at some unspecified point in the future.")).  In

12  addition, PTP asserts that it "did not provide Alavara with source code or algorithm

13  information pertaining to the PTP product in writing or other documentary form."

14  (3/23/20 Pavlou Decl. ¶ 12.)  PTP argues that because it "had not provided Avalara with

15  any written descriptions of its trade secrets, [it] was never concerned about Avalara's

16  failure to return written materials to PTP subsequent to [the] August 2011 meeting."  (*Id.*)

17  Thus, PTP argues that the discovery rule was not triggered in April 2012.  (*See* MSJ at

18  11-13.)

19  //

20  //

21        [7] Avalara also argues that PTP's notice of this breach in April 2012 put PTP on notice of
its misappropriation of trade secrets claims.  (*See* MSJ at 10-13.)  The court addresses these

22  claims in the next section of this order.  *See infra* § III.C.3.

ORDER - 15

1   The problem with PTP's argument and the portions of Mr. Pavlou's declaration

2   upon which PTP's argument relies is that they are in direct conflict with allegations in

3   PTP's complaint.  First, although PTP now characterizes Avalara's April 2012 notice as

4   "ambiguous and indefinite" (Resp. at 5), PTP did not characterize Avalara's notice that

5   way at the time PTP filed its complaint.  Indeed, despite PTP's current position that it

6   continued to believe in April 2012 that Avalara was interested in a future acquisition (*see*

7   3/23/20 Pavlou Decl. ¶ 10; Resp. at 5 ("PTP continued to believe that Avalara was

8   interested in an acquisition after 2012.") (bolding omitted)), PTP expressly alleges in its

9   complaint that "[i]n April, 2012, Avalara informed PTP that it was no longer interested in

10   a business deal" (Compl. ¶ 26).  The court cannot reconcile these two positions.

11   Further, PTP's argument that it did not provide Avalara with information or trade

12   secrets "in writing or other documentary form" is also belied by the allegation in its

13   complaint that "[o]n August 3, 2011, under the Confidentiality Agreement, [PTP] mailed

14   the Pavlou SalesTaxPro to [Avalara] via UPS Overnight Express mail along with the key

15   to unlock all of the software's features."  (*Id.* ¶ 24; *see also id.* ¶ 22 ("All the while the

16   Avalara personnel asked questions and took notes, including copying PTP's trade secrets

17   form the white board.").)  The court cannot reconcile these conflicting statements either.

18   Under federal law,[8] "stipulations and admissions in the pleadings are generally

19   binding on the parties and the Court."  *Am. Title Ins. Co.*, 861 F.2d at 226.  "Judicial

20   admissions are formal admissions in the pleadings that have the effect of withdrawing a

21

22   _____

[8] The admissibility of evidence is a procedural matter that is governed by the Federal
Rules of Evidence.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

fact form issue and dispensing wholly with the need for proof of a fact." *Id.* Factual

assertions in pleadings . . . , unless amended, are considered judicial admissions

conclusively binding on the party who made them." *Id.* The general rule is that a party

cannot create a triable issue by relying on a declaration that is inconsistent with the facts

alleged in its complaint. *Rodriguez v. City of Monclair*, No. EDCV 14-00224-JGB

(DTBx), 2015 WL 7180530, at * 8 (C.D. Cal. Nov. 13, 2015) (citing *Rojas v. Roman*

*Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)). Where appropriate, the

court will disregard a subsequent, inconsistent declaration or affidavit—known as a

"sham affidavit" or declaration—when evaluating summary judgment. *See Rojas*, 660

F.3d at 106 (granting summary judgment where the nonmoving party relied on a "sham

affidavit" directly contradicted by sworn statements and pleadings).

 Although the "sham affidavit" rule is necessary to maintain the utility of summary

judgment, it should be applied with caution. *Van Asdale v. Int'l Game Tech*, 577 F.3d

989, 998 (9th Cir. 2009). Thus, before applying the rule, the district court should make

two findings: (1) that the inconsistency between the prior judicial admission and the

subsequent affidavit or declaration is "clear and unambiguous," and (2) that the

contradiction between the affidavit or declaration and the prior pleading is "actually a

sham." *Id.*

 The court makes both findings here. First, as noted above, the court cannot

reconcile the referenced statements in Mr. Pavlou's declaration with the prior allegations

in PTP's complaint and thus finds that the inconsistencies are "clear and unambiguous."

*See id.* Second, the court considers whether the contradictions between PTP's complaint

1    and the statements in Mr. Pavlou's declaration are actually a sham. *See id.* When a party

2    fails to provide a credible explanation for a contradiction between a prior admission and a

3    later sworn statement, the court need not permit the party to withdraw its prior admission.

4    *See DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*,

5    No. C14-5880JLR, 2016 WL 631574, at *11 (W.D. Wash. Feb. 16, 2016). Here, PTP

6    offers no explanation for the inconsistencies between its present positions and the

7    referenced statements in Mr. Pavlou's declaration, on the one hand, and the allegations in

8    its complaint, on the other. (*See generally* 3/23/20 Pavlou Decl.; Resp.) Thus, the court

9    concludes that Mr. Pavlou's declaration is a sham offered merely to avoid the

10   consequences of the summary judgment procedure. *See Patriot Rail. Corp. v. Sierra R.R.*

11   *Co.*, No. 2:09-CV-0009-TLN-AC, 2015 WL 4662707, at *5 (E.D. Cal. Aug. 5, 2015)

12   ("[The law] does not allow a party to contradict binding admissions to avoid an unwanted

13   outcome."). Accordingly, the court declines to allow PTP to withdraw the judicial

14   admissions in its complaint and will disregard the contradictory statements in Mr.

15   Pavlou's recent declaration.

16        The effect of this ruling is that PTP's contract claim is barred by the four-year

17   statute of limitations. PTP admits that "[i]n April 2012, Avalara informed PTP that it

18   was no longer interested in a business deal with PTP." (Compl. ¶ 26.) This notice

19   triggered Avalara's duty under the Confidentiality Agreement to "promptly destroy"

20   PTP's confidential information and "confirm such destruction" to PTP or "promptly

21   deliver" to PTP "all copies" of PTP's confidential information in its possession. (*See*

22   Confidential Agreement ¶ 4.) PTP admits that it provided copies of its confidential

1    information to Avalara pursuant to the Confidential Agreement.  (*See* Compl. ¶ 24; *see*

2    *also id.* ¶ 22.)  Yet, Avalara never returned PTP's confidential information or confirmed

3    its destruction (MSJ at 4 (citing 3/5/20 Byer Decl. ¶ 2, Ex. 1 at 3), 10), and PTP does not

4    argue otherwise (*see generally* Resp.).  Accordingly, PTP was on notice of Avalara's

5    potential breach of the Confidentiality Agreement no later than April 2012.  Indeed, PTP

6    seems to admit as much in its response to Avalara's motion.  (*See* Resp. at 11 ("Therefore

7    at most only a breach of contract claim based on the 'return or destroy' provision would

8    have accrued.").)  Of course, once PTP was on notice of this breach, it was charged with

9    notice of everything to which a reasonable inquiry might lead, *Interlake Porsche & Audi,*

10   *Inc.*, 728 P.2d at 607; *Corliss v. Hartge*, 42 P.2d at 46, which as discussed below would

11   have led PTP to information sufficient to place PTP on notice of Avalara's alleged

12   violations of the use provisions of the Confidentiality Agreement as well.  Thus, based on

13   PTP's own admissions and the additional undisputed evidence that Avalara submits, the

14   court concludes that PTP's breach of contract claim is barred by the applicable four-year

15   statute of limitations and that Avalara is entitled to summary judgment in its favor.

16                    3.  PTP's Trade Secrets Misappropriation Claims

17           Avalara argues that three independent events triggered the statute of limitations on

18   PTP's trade secrets misappropriation claims, and because all three of these events

19   occurred more than three years before PTP filed its October 22, 2018, complaint, PTP's

20   claim is time-barred.  (*See generally* MSJ.)  As noted above, in addition to Avalara's

21   alleged breach of the parties' Confidentiality Agreement, those events include PTP's

22   receipt of a January 2013, email alerting PTP to Avalara's purchase of a large database of

1   UPCs and Avalara's March 2014 press release and white paper announcing Avalara's use

2   of that database in a product that PTP now accuses of misappropriation.  (*See generally*

3   *id.*)

4           PTP argues that that it was not on notice of Avalara's alleged trade secret

5   misappropriation because none of the events upon which Avalara relies establish that a

6   misappropriation had already occurred.  (*See* Resp. at 10-17.)  PTP acknowledges that the

7   discovery rule governs its UTSA and DTSA claims but argues that mere suspicion of a

8   claim is not enough and that accrual of its UTSA and DTSA claims "requires an actual

9   wrong to have been committed."  (Resp. at 10 (citing *Intermedics, Inc. v. Ventritex, Inc.*,

10  775 F. Supp. 1258, 1266 (N.D. Cal. 1991); *Sokol Crystal Prod., Inc. v. DSC Commc'ns

11  Corp.*, 15 F.3d 1427, 1429 (7th Cir. 1994)).)[9]  Indeed, PTP argues that to trigger the

12  limitations period, Avalara must demonstrate that PTP knew Avalara was using PTP's

13  trade secrets in Avalara's products.  (*See* Resp. at 10-11) (asserting that the mere fact that

14  Avalara failed to either destroy or return PTP's confidential information following

15  Avalara's announcement that it was no longer interested in a business deal with PTP was

16  not notice of PTP's USTA and DTSA claims because "the mere failure to comply with

17  [this] . . . obligation does not establish that Avalara was, at that time, using PTP's trade

18  //

19

20          [9] The court notes that *Intermedics* is distinguishable because the plaintiff conducted an
    independent audit and was unable to confirm their suspicions concerning any misappropriation.
21  *See* 775 F. Supp. at 1266.  The court further notes that *Sokol Crystal* is also distinguishable
    because there the trade secret was acquired "by lawful means," and so the court analyzed the
    discovery rule on the sole basis of when the plaintiff knew or should have known that its trade
22  secret was misused—not when the trade secret was disclosed or acquired by improper means.
    *See* 15 F.3d at 1429.

1   secrets in its own products.").)  PTP misapprehends what is required to place it on notice

2   of a trade secrets misappropriation claim under the discovery rule.

3          Analysis of the statute of limitations as it relates to a trade secrets claim "must be

4   performed with reference to the statutory definition of the term 'misappropriation.'"  *See*

5   *McLeod*, 969 P.2d at 1071.  Misappropriation under both the DTSA and the UTSA

6   includes not just the wrongful "use" of another's trade secret but also the wrongful

7   "acquisition" or "disclosure" of another's trade secret.  Specifically, misappropriation is

8   defined as the "[a]cquisition of a trade secret . . . by improper means," or the

9   "[d]isclosure or use or a trade secret . . . without express or implied consent . . . ."  RCW

10   19.108.010(2)(a) & (b); *see also* 18 U.S.C. § 1839(5)(A) & (B) (same).  Thus, analysis of

11   the limitations period "focuses on facts related to the acquisition, disclosure or use of a

12   trade secret."  *McLeod*, 969 P.2d at 1069.  Nevertheless, the "primary focus" of the

13   court's statute of limitations analysis remains "on the application of the discovery rule

14   established in RCW 19.108.060."  *Id*. at 1071; *see also* 18 U.S.C. § 1836(d) (providing

15   for a virtually identical discovery rule under the DTSA).  Thus, PTP's focus on Avalara's

16   use of its trade secrets alone is misplaced.

17          The court agrees with PTP that mere suspicion is not sufficient to trigger the

18   discovery rule (*see* Resp. at 10), but a "smoking gun" is not required, *Ill. Tool Works,*

19   *Inc.*, 2010 WL 4668447, at *5 (quoting *Beard*, 889 P.2d at 504).  All that is required is a

20   "reasonable" suspicion that a specific wrongful act has occurred.  *Beard*, 889 P.2d at 504.

21   As the *Beard* court further explains:

22   *//*

ORDER - 21

At that point, the potential harm with which the discovery rule is concerned—that remedies may expire before the claimant is aware of the cause of action—has evaporated.  The claimant has only to file suit within the limitations period and use the civil discovery rules within that action to determine whether the evidence necessary to prove the cause of action is obtainable.  If the discovery rule were construed so as to require knowledge of conclusive proof of a claim before the limitations period begins to run, many claims would never be time-barred.

*Id.*

In considering whether PTP was on notice of its UTSA and DTSA claims, the court finds the *McLeod* court's analysis, which applied the discovery rule in the context of a trade secrets misappropriation claim, helpful.  *See* 969 P.2d at 1070-71.  In *McLeod*, a researcher filed suit against his son's employer seeking damages for trade secret misappropriation.  *Id.* at 1067-68.  The researcher's son had disclosed the researcher's trade secret to the son's employer on January 14, 1987, and then informed his father of his disclosure on the same date.  *Id.* at 1068.

As indicated above, the *McLeod* court began its analysis by noting that application of the discovery rule in a trade secrets misappropriation claim "focuses on facts related to the acquisition, disclosure or use of a trade secret."  *Id.* at 1069; *see also id.* at 1071 ("[A]nalysis of statute of limitations questions under the UTSA must be performed with reference to the statutory definition of the term 'misappropriation'.").  The *McLeod* court also noted that as a "practical result" this will "grant[] special significance to the date of disclosure because this event occurs first in time."  *Id.* at 1071.  The court continued:

Generally, the date of an unauthorized disclosure will serve as the event that triggers the statute of limitations where the date of disclosure can be readily determined and it is shown that the claimant was aware of the disclosure.  In other words, the date of an unauthorized disclosure will be the triggering event

if the claimant knew or should have known of the disclosure. The date of disclosure is also crucial for another practical consideration. The unauthorized disclosure of a trade secret will always be an event of significance for the simple reason that it is the confidential nature of the information that the claimant seeks to protect.

This does not mean that the inquiry is limited to the date of disclosure. Application of the discovery rule requires a careful consideration of the facts in each case. When the date of an unauthorized disclosure is not immediately discovered by the claimant, the period of limitation will not commence until the claimant knew or should have known of the disclosure. When the date of disclosure is authorized or the date of disclosure is unknown, facts related to the use of the trade secret and the claimant's knowledge of this use will be determinative.

*Id.* The *McLeod* court concluded that the researcher "knew or should have known that he had a cause of action against [his son's employer] for the misappropriation of a trade secret on January 14, 1989"—the date on which the researcher's son disclosed the trade secret to the son's employer. *Id.* Because the researcher had not commenced his suit within three years of that date, his misappropriation claim was barred by the statute of limitations. *Id.*

A careful reading of the *McLeod* case reveals that when the court discusses the date of "disclosure," it also implicitly refers to the date of the son's employer's "acquisition" of the researcher's trade secret. Indeed, the researcher was not suing his son for improper disclosure, *see* RCW 19.108.010(2)(b)(ii)(B), (C) (defining misappropriation as "disclosure" under circumstances where there was "duty" to "maintain its secrecy"); 18 U.S.C. § 1839(5)(B)(ii)(II), (III) (same); rather, he was suing his son's employer for improper acquisition of his trade secret, *see* RCW 19.108.010(2)(a) (defining misappropriation as "acquisition" "by improper means"); 18

U.S.C. § 1839(5)(A) (same). *See McLeod*, 969 P.2d at 1067 ("[The plaintiff researcher] filed this suit against [his son's employer] seeking damages for . . . the misappropriation of a trade secret. The parties agree that the confidential information was disclosed by [the researcher's son] to a representative of [the son's employer] on January 14, 1987."). It just so happens that the son's employer's improper acquisition of the researcher's trade secret occurred through and at the same moment as the researcher's son's improvident disclosure.

This confluence of the terms "acquisition" and "disclosure" in the *McLeod* case is significant here because at the time PTP disclosed its trade secrets to Avalara, the disclosure was authorized pursuant to the parties' Confidentiality Agreement; and thus, Avalara's initial acquisition of PTP's trade secrets was not in violation of either the UTSA or the DTSA. *See* RCW 19.108.010(2)(a) (indicating that acquisition of a trade secret only constitutes misappropriation if the trade secret is acquired "by improper means"); 18 U.S.C. § 1839(5)(A) (same). However, once Avalara provided PTP notice under the Confidentiality Agreement that it was no longer interested in pursuing a business deal and failed to either promptly return PTP's confidential information or promptly destroy it and notify PTP of the destruction, *see supra* § III.C.2, Avalara's acquisition or retention of PTP's trade secrets was no longer by proper means and PTP was on notice of its misappropriation claim. Just as in *McLeod*, PTP either knew or should have known of its misappropriation claim once it knew that Avalara's retention of its trade secrets was no longer proper—indeed this fact rendered Avalara's acquisition of PTP's trade secrets improper from that point forward. *See* 969 P.2d at 1071; *see also Ill.*

1  *Tool Works, Inc.*, 2010 WL 4668447, at * 6 ("[T]he statue begins to run as soon as the

2  plaintiff reasonably suspects that a specific wrongful act has occurred.") (citing *Beard*,

3  889 P.2d at 504).  In other words, PTP should have known of its misappropriation claim

4  no later than April 2012, when Avalara failed to either return PTP's confidential

5  information or destroy that information and inform PTP of its destruction.

6       Two federal district courts have applied this principle in factually similar

7  situations.  In *Wang v. Palo Alto Networks, Inc.*, No. C121-05579 WHA, 2014 WL

8  141034 (N.D. Cal. Apr. 11, 2014), the Northern District of California concluded that the

9  defendant's breach of the parties' non-disclosure agreement outside of the limitations

10  period rendered the plaintiff's trade secret claim time-barred.  *Id.* at *7.  The parties'

11  agreement in *Wan*g required the defendant to return the plaintiff's confidential

12  information upon either termination or expiration of the agreement.  *Id.* at *2.  The *Wang*

13  court held that the defendant breached the agreement when the defendant failed to return

14  the plaintiff's trade secrets.  *Id.* at *7.  Under these circumstances, the *Wang* court held

15  that the defendant's breach of the non-disclosure agreement by failing to return the

16  plaintiff's trade secrets placed the plaintiff on inquiry notice of his trade secret

17  misappropriation claim.  *Id.*

18       Likewise, in *Alta Devices, Inc. v. LG Electronics, Inc.*, No. 18-CV-00404-LHK,

19  2019 WL 1924992 (N.D. Cal. Apr. 30. 2019), the court also relied upon the defendant's

20  breach of a non-disclosure agreement to trigger the limitations period.  *See id.* at *13.  In

21  *Alta Devices*, the parties entered into a non-disclosure agreement that required the

22  defendant to return the plaintiff's confidential information at the end of the agreement's

1    disclosure period, which was defined by a specific date. *Id.*  The complaint alleged that

2    the defendant failed to return the plaintiff's confidential information both on and after

3    that date. *Id.*  Like the court in *Wang*, the *Alta Devices* court also concluded that the

4    defendant's breach of the non-disclosure agreement by failing to timely return the

5    plaintiff's confidential information placed the plaintiff on notice of its trade secrets

6    misappropriation claim and commenced the statutory period. *Id.*

7         Like the courts in *Wang* and *Alta Devices*, this court also concludes that Avalara's

8    breach of the Confidentiality Agreement in April 2012 placed PTP on notice of its trade

9    secrets misappropriation claims.  Just like the *Wang* and *Alta Devices* defendants,

10   Avalara initially acquired PTP's confidential information properly pursuant to the parties'

11   Confidentiality Agreement.  Also, just like the *Wang* and *Alta Devices* defendants, once

12   Avalara violated the parties' agreement by failing to either return or destroy PTP's

13   confidential information, Avalara's retention of PTP's information became wrongful and

14   its retention or acquisition of PTP's trade secrets was "by improper means" going

15   forward.  *See* RCW 19.108.010(2)(a); 18 U.S.C. § 1839(5)(A).  As such, PTP was on

16   notice of its trade secret misappropriation claims by no later than April 2012.

17   Accordingly, PTP's UTSA and DTSA claims are time-barred and Avalara is entitled to

18   summary judgment on those claims.[10]

19   //

20

21   [10] PTP attempts to distinguish *Wang* and *Alta Devices* by arguing that, unlike in those cases, a factual dispute exists here "over whether the return or destroy clause was triggered in 2012 (or at any time)."  (Resp. at 13.)  However, as discussed above, the court concludes that PTP's judicial admissions in its complaint dispel any genuine material dispute on this issue.  *See supra* § III.C.2.

22

1    Finally, the court also concludes that, even if Avalara's breach of the

2 Confidentiality Agreement was insufficient alone to place PTP on notice of its trade

3 secret misappropriation claims, Avalara's breach in combination with PTP's knowledge

4 in January 2013 of Avalara's acquisition "of the world's largest database of [UPCs] with

5 specialized sale taxability data" was sufficient to start the limitations period running.

6 (*See* 3/5/20 Byer Decl. ¶ 17, Ex. 16.)  In so concluding, the court notes that PTP

7 specifically avers that in the parties' August 2, 2011, meeting, PTP disclosed its trade

8 secrets related to the use of UPCs for determining sales tax.  (*See id.* ¶ 14, Ex. 13 at 13.)

9 Despite this disclosure, PTP maintains that instead of worrying that Avalara's UPC

10 database purchase might mean that Avalara intended to or had already stolen PTP's UPC

11 trade secrets, Mr. Pavlou thought that Avalara's purchase indicated that Avalara "might

12 be gearing up to make an offer to acquire PTP."  (*See* 3/23/20 Pavlou Decl. ¶ 11.)  PTP

13 argues that Mr. Pavlou's belief is a reasonable inference to draw from the evidence, and

14 that, in the context of a summary judgment motion, the court must credit Mr. Pavlou's

15 belief over Alavara's competing inference.  (*See also* Resp. at 13-14.)

16    PTP's analysis, however, is flawed.  The supposition in PTP's argument is that

17 Mr. Pavlou's subjective belief is relevant to the court's analysis.  It is not.  Instead, the

18 question the court considers is whether, based on PTP's knowledge of Avalara's breach

19 of the Confidentiality Agreement and purchase of the UPC database, PTP "should have"

20 discovered its misappropriation claim by the "exercise of reasonable diligence."  *See* 18

21 U.S.C. § 1836(d); RCW 19.108.060.  In other words, the standard the court considers is

22 objective, not subjective.  *See McLeod*, 969 P.2d at 1070-71 ("The UTSA provides that

1   the three-year statute of limitations will be triggered by the application of the discovery

2   rule and that an objective standard will be applied to determine whether the

3   misappropriation should have been discovered."). Critically, PTP does not deny

4   knowledge of Avalara's purchase; it only disputes the subjective conclusion that Mr.

5   Pavlou draws from that purchase. Applying an objective standard, as the court must, the

6   court concludes that following these two events—Avalara' s breach of the Confidentiality

7   Agreement and Avalara's UPC data base purchase—PTP "should have" discovered its

8   trade secret misappropriation claims through the "exercise of reasonable diligence," *see*

9   18 U.S.C. § 1836(d); RCW 19.108.060, and no reasonable juror could conclude

10  otherwise.

11        Indeed, even crediting Mr. Pavlou's testimony would not alter the court's analysis.

12  Irrespective of Mr. Pavlou's subjective hope that Avalara might have a renewed interest

13  in acquiring PTP or its technology, Avalara's database purchase and its breach of the

14  Confidentiality Agreement, in combination, were still sufficient for PTP to "reasonably

15  suspect[] that a specific wrongful act ha[d] occurred" and to be "on notice that legal

16  action must be taken." *See Beard*, 889 P.2d at 504. Accordingly, the court rules that

17  these two events triggered the three-year limitations period on PTP's trade secrets claims

18  no later than January 2013, when PTP learned of Avalara's purchase. As such, the

19  three-year limitations period on PTP's USTA and DTSA claims expired prior to the filing

20  //

21  //

22  //

1   of PTP's October 22, 2018, complaint, and the court grants summary judgment in

2   Avalara's favor on these claims.[11]

3                           **IV.   CONCLUSION**

4          Based on the foregoing analysis, the court GRANTS Avalara's motion (Dkt.

5   #102), concludes that the applicable statutes of limitation expired on PTP's remaining

6   claims prior to the filing of PTP's complaint, and enters summary judgment in Avalara's

7   favor on PTP's breach of contract claim and misappropriation of trade secrets claims

8   under both the UTSA and DTSA.

9          Dated this 27th day of May, 2020.

10

11                                              _____

12                                              JAMES L. ROBART
                                                United States District Judge

13

14

15

16

17

18

19

20   _____

          [11] Because the court concludes that Avalara is entitled to summary judgment on PTP's
21   trade secret misappropriation claims on the two grounds stated above, *see supra* §§ III.C.2,
     III.C.3, the court declines to consider Avalara's third ground for summary judgment based on the
22   running of the statute of limitations from March 2014, when Avalara published a press release
     and white paper announcing "new functionality" to AvaTax.  (*See* MSJ at 15-17.)

ORDER - 29